THE WATERS-PIERCE OIL COMPANY V. ALBERT B. DESELMS.

(Filed February 13, 1907.)

1. POLICE POWER OF STATE. Where the statute, as in this territory, prohibits the sale of petroleum products except the same be of a specified degree of purity: Held: That the passage and enforcement of such statute is within the police power of the territory and may be strictly enforced.

2. NEGLIGENCE. Where a corporation engaged in the wholesale distribution of coal oil, after an inspection of a tank of oil as required by the laws of the territory, by accident mingles and mixes gasoline with same, and sells the same to the general trade as pure and standard grade oil, without re-inspection and without notice: Held: That such sale is an act of negligence for which it would be liable in damages for injuries resulting from such negligent act to the person purchasing the same as pure oil from the vendee of the corporation so selling and disposing of the same.

3. CIRCUMSTANTIAL EVIDENCE—Inference Therefrom. Where an accident has occurred resulting in the death of all the persons immediately connected therewith and there is no direct proof as to how the accident occurred, the manner of its occurrence may be shown by circumstantial evidence from which the jury may infer the manner and cause of the accident if the inference is a reasonable, although not necessary resulting fact.

4. COMMON KNOWLEDGE—Jury May Act Upon. Where, on the trial of a case, a probative fact is the subject of consideration and the existence of such fact is a matter of general knowledge, it is not reversible error for the trial court to direct the jury to determine the existence of such fact, without proof, if a usage or custom in performing the act sought to be established is so general and universal as to be a part of the general knowledge and experience of persons of average intelligence and experience for the reason that jurors may act upon matters of common observation within their general knowledge without any testimony on those matters.

5. DAMAGES—When Not Excessive. Where the verdict of the jury for damages resulting from the death of an individual is within the statutory limitations in such cases and there is no special

evidence shown by the record from which the court may determine that the damages awarded are excessive or given under the influence of passions or prejudice this court may not interpose its judgment for that of the jury in determining the amount of the award.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Jno. H. Burford, Trial Judge.*

*Shartel, Keaton & Wells,* for plaintiff in error.

*Lawrence & Huston* and *Devereux & Hildreth,* for defendant in error.

### STATEMENT OF FACTS.

This action was commenced in the district court of Logan county by the defendant in error, Albert B. Deselms, against the plaintiff in error The Waters-Pierce Oil Company to recover damages for the death of his wife and two children, occasioned as alleged by the wrongful and gross negligence of the plaintiff in error.

The petition alleges that The Waters-Pierce Oil Company, at and previous to the 28th day of January, 1903, was engaged in the business of a jobber or wholesaler of coal oil and gasoline in the Territory of Oklahoma, and in the conduct of that business to have had a tank station at the city of Guthrie, where it kept oil and gasoline in storage in large quantities for shipment to retail dealers; and that at some time previous to the said 28th day of January, 1903, the defendant mixed and mingled a large quantity of gasoline with a large quantity of coal oil, and that on the same day when this was done the agents and employes of defendant discovered and were fully informed of the fact that said fluids

had been mixed and mingled in one of the tanks of said defendant located at its agency at said city of Guthrie; and further alleges that this mixture of coal oil and gasoline was highly inflammable, liable to explode and particularly dangerous to be used as coal oil, which defendant well knew. That the defendant, knowing and being fully informed that the said coal oil and gasoline had been mixed and mingled, and that the same constituted a dangerous and explosive mixture, knowingly vended and sold as P. W. coal oil three barrels of said mixture to the firm of Powers & Deselms, retail merchants at Orlando, Oklahoma, and that the plaintiff purchased from said firm of Powers & Deselms, one gallon of said mixture and took it to his home in an ordinary 2 gallon oil can, and that neither the plaintiff nor either member of said firm or any clerk or employe of said firm had any notice or knowledge that said coal oil and gasoline had been mixed and mingled together, or of the dangerous character of said mixture, and that by reason of the dangerous and explosive character of said mixture, on the 4th day of February, 1903, it exploded, setting on fire the residence of plaintiff and causing the death of plaintiff's wife and two children.

The defendant in due time filed its answer which was a general denial and an allegation, that, if the accident complained of occurred, it was caused by the negligence of plaintiff's wife, Rosaline Deselms, directly contributing thereto. To this answer plaintiff replied by a general denial. On the 28th day of February, 1905, plaintiff, by leave of the court first granted, dismissed his first cause of action, being the claim for the death of his wife, Rosaline Deselms, and the

cause came for trial on the 3rd day of March, 1905, before the court and jury.

On the trial of the cause defendant admitted that on the 19th day of January, 1903, there was an accidental mixture in a tank of oil containing 6666 gallons of coal oil, in which there was mixed by mistake 305 gallons of gasoline, and that the defendant was at once apprised of the mixture and upon full consideration of the fact, directed its agent in charge of the tank to sell the contents of the tank as ordinary illuminating coal oil, with full knowledge of all the facts. The defendant's manager at Guthrie, N. M. Carter, testified to the same fact, and there was also introduced in evidence a letter, dated January 20, 1903, from the defendant's manager at Denison, Texas, disclosing full knowledge of the fact of the mixture and its extent. The letter above referred to is as follows:

> "NORTHERN TEXAS DIVISION.
> "E. T. Hathway, Manager.
>                "Denison, Texas, 1-20, 1903.

"Mr. N. M. Carter, Agt.,
    "Guthrie.
"Dear Sir:
    "I am sorry to note from your favor of the 19th inst. that Mr. Davis, your driver, through error let about 300 gallons of gasoline run into your P. W. oil storage tank, and cannot believe that this amount of gasoline will materially affect the burning quality of the P. W. oil, at any rate, we will have to watch the matter, and take chances on selling all the P. W. oil in P. W. oil storage tank, trusting that same will give good results.

>                "Yours very truly,
>                      "J. W. WAGONER,
>                            "Ass't Mgr."

On the receipt of this letter the agent at Guthrie proceeded to sell the mixture of oil and gasoline to the various merchants in his territory as called for.

On January 28, three barrels of this oil, containing the mixture of gasoline, were sold to Powers & Deselms as ordinary coal oil, two barrels of which were emptied into a galvanized iron tank in their store at Orlando, the tank being empty at the time. The other barrel was disposed of by them to another merchant. The oil, after the mixture, was not inspected in bulk in defendant's tank, nor did the barrels shipped to Powers & Deselms bear any inspector's brand, nor was the contents of either barrel inspected while in the hands of Powers & Deselms and before sale. It appears from the invoice that inspection fees were added to the price of the oil in the sale to Powers & Deselms and neither Powers & Deselms, nor plaintiff had any knowledge of the mixture of gasoline with the oil until after the fire.

After the fire and on the following day, samples were taken from the tank of Powers & Deselms' store and sealed and submitted to Professor Holter, chemist of the Agricultural and Mechanical College at Stillwater.

On Sunday morning, February 1, 1903, the plaintiff, who was clerking in Powers & Deselms store, went to the store with a two-gallon galvanized iron oil can and drew off from the contents of the tank containing the mixture, one gallon of the same and took it to his home and on the afternoon of the same day plaintiff left home to go to Purcell and was absent for several days, and at the time of the fire.

There is no surviving eye-witness to the origin of the fire. The plaintiff's dwelling was a small one story building, 12 by 14 feet, standing lengthwise east and west, and divided into two rooms, the east room about 10 by 12, being used for a kitchen, and the west room, about 12 by 12 feet, as a general living and sleeping room. The cook stove was near the east wall of the kitchen, and the heating stove, one of the vertical cylindrical type, composed of a conical firebox and a cylindrical plate metal body with a door in the side, was on the east side of the living room, and both stoves connected with a brick flue in the partition wall. The walls of the building were constructed of studding, weather-boarded on the outside and lathed on the inside, the lath being covered with cloth and paper, and not plastered. From the time of the delivery of the oil can containing the mixture of oil and gasoline at plaintiff's house, on Sunday, until Tuesday evening the can was not used or handled, but on Tuesday the plaintiff's sister, Mrs. Emory, who was staying with his family during his absence, filled a new lamp from the contents of the can and lighted it and almost immediately after lighting it the flame shot out of the lamp chimney, and she turned it down and blew it out, but had to blow several times to extinguish the flame. Thinking it was the fault of the wick, she trimmed the wick and lit it again, when it immediately performed in the same manner, and she extinguished it and did not light it any more. She left the oil can in the kitchen near the southwest corner by the washstand. It was a warm evening and they let the fires go out.

On the following morning the plaintiff's sister, Mrs. Emory, got up and lighted the kitchen fire and they cooked

breakfast and Mrs. Emory then went to kindle a fire in the heating stove.  She shook down the ashes, examined the ash pan and asserts there were but few ashes in the pan and the stove was cold.  Mrs. Deselms then called her to assist in dressing the children, and she did so, not having put anything in the stove.  Mrs. Deselms said she would start the fire in the heating stove after breakfast.  This witness testified quite positively that there was no fire in the stove at the time she left the house, about eight o'clock A. M., to go to the store where she was employed, and she was the last person to see either of the three deceased persons alive.

The plaintiff's house was discovered to be on fire at about ten o'clock in the forenoon, and upon the arrival of the first person on the scene, it was so completely ablaze that it was impossible, on account of smoke and gases, to force an entrance into the building.  About nine o'clock in the morning it had blown up cold from the northwest, and there was a high wind blowing from that direction at the time the fire occurred.  Mr. Bradshaw was the first person to arrive at the building, and he broke in the back or kitchen door and tried to get into the other room, but was choked down by the dense smoke and gas and came out.  He tried a second time to enter the house and was again choked and smothered by the smoke and gas and had to retreat.  He then ran around the house and tried to get in otherwise.  About this time others came and they broke in the north wall and found the plaintiff's son lying face downward on the bed near the northwest corner of the house badly burned and life extinct, probably from suffocation.  As the smoke cleared somewhat from the room they could see the body of plaintiff's wife lying on the

floor and what remained of the little girl on a couch. By pushing the building partly over, the charred bodies were taken out before the fire had completely burned out.

After the fire and after the remains of the building had fallen in and been pushed aside and the fire partly extinguished, the heating stove was found inclined to the northwest from the floor being partly burned out beneath it; the top was off the stove and the upper hinge to the door broken, the door hanging by the lower hinge. There was paper, kindling and wood in the stove just a little charred. The plaintiff's wife was lying with her feet near the stove, her head away from it in a westerly direction in front of the stove door. Near her body was found the top or conical part of the oil can, the body of the can being found four to seven feet away in a southwesterly direction. These were the conditions existing at the time the fire was subdued suffiiciently to admit of examination by those present.

The evidence further disclosed that the children were both very nice, bright, healthy and active children. The boy, Fred, was four years old, and the little girl two years old. Neither had ever been sick and both were in perfect health at the time of the fire.

The foregoing is a substantial statement of the facts developed upon the trial of said cause, as the same are shown by the record filed in this court.

The cause was tried at the February, 1905, term of the district court, of Logan county, to the court and a jury, at the conclusion of which trial the jury returned a verdict in favor of the plaintiff for $14,500.00.   In due time a motion

for a new trial was filed, considered by the court and over-ruled, and judgment rendered on the verdict. From this judgment and the order overruling the motion for a new trial the cause comes to this court by case made.

Opinion of the court by

GILLETTE, J.: We have set forth the foregoing unus-ually elaborate statement of facts, because it is manifest the fact is one which must be determined almost exclusively from circumstantial evidence.

The first objection urged by the plaintiff in error for a reversal of the judgment rendered in the cause, is the claimed insufficiency of the evidence to support the verdict and judg-ment, and under this head it is argued:

"That the plaintiff's case is not made by showing the negligent admixture and his purchase of a portion of that mixture. He also takes the burden of proving it to have been the efficient cause of the fire; that the accident would not have happened if the oil had not had the gasoline in it."

We are inclined to think this a fair statement of the burden cast upon the plaintiff and we are also inclined to think this requirement of the law has been fairly complied with by the evidence in this case.

The fact of the admixture of the coal oil and gasoline by the agents of the plaintiff in error, its knowledge of the mixture and its acts in knowingly placing the same upon the market; the sale and delivery of three barrels of the mixture to the firm of Powers & Deselms, the purchase of one gallon by the plaintiff, the taking of it in a two gallon can to his residence, the fire and the death of the plaintiff's wife and

children, are established facts; and that the wife and two children of defendant in error lost their lives in the fire that destroyed their home, there is no question. What was the proximate cause of this fire becomes, therefore, the important question to be determined in this case. The jury before whom the case was tried have answered this question, but because the insufficiency of the evidence to sustain their verdict is questioned, it becomes necessary for this court to look into the evidence sufficiently to determine whether there was any evidence submitted to them upon which such verdict could reasonably be founded. As we have already said, the evidence connecting the plaintiff in error, with the origin of the fire, is entirely circumstantial and we are, therefore called upon to analyze with some care the probative force of these circumstances. That coil oil as derived from the earth is unfit for commercial purposes, and that it is refined for the purpose of fitting it for illuminating purposes, *i. e.* for the purpose of removing from it both detrimental and dangerous elements is well known by all persons, and hence a matter of common knowledge.

The oil contained in the storage tank had been refined, and the refined product had been inspected and tested by the territorial oil inspector, and had by him been certified to comply with the territorial law in respect to safety and suitability as a salable product under the law. This, however, was before the admixture of gasoline with it. It was sold to Powers and Deselms, after such admixture without farther inspection, and without notice; that the admixture of the gasoline with the oil after inspection of the oil, changed its condition to a product more dangerous, and that the sale of such

admixture for general use as coal oil, without further inspection, was a transaction in violation of the law, must be conceded. The positive testimony of Professor Holter, of the dangerous and explosive character of this mixture, which is charged as being the proximate cause of the death of the two children, the circumstances of the new lamp filled with this fluid the night before the fire, and its threatening and dangerous performance when lighted, presented to the jury such an array of proof that this court cannot now say that there was no evidence, or that there was not sufficient evidence before the jury to warrant it in concluding that the mixture of coal oil and gasoline, thus put upon the market, by the plaintiff in error, was dangerous to use as coal oil, and that the plaintiff in error was guilty of negligence in thus' marketing the same without giving notice of its real constituents. It is true that they did not sell it directly to the defendant in error, but it is also true that they sold it to their vendee, under such circumstances as to charge them with knowledge that it would be resold to consumers, and, having such knowledge, it was by the plaintiff in error put upon the market, and allowed to go into the channels of trade by the agents of the plaintiff in error with directions to "watch the same and take chances, trusting that the same will give good results." Such a transaction, so knowingly entered into, we think, charges the plaintiff in error with the responsibilities of gross negligence. With reference to the charge of contributory negligence contained in the answer of plaintiff in error, no proof having been introduced other than is shown by the general evidence in the case, which raises a presumption that the wife of defendant in error was at the time of the acci-

dent engaged in act of kindling a fire with the use of the oil, we cannot hold that such defense is sustained. The use of coal oil for such purpose is too common and too well known for the court to say that it was negligence on her part to so use it, beside the instinct of self-preservation justifies the presumption that in so using it, she did so with due care. *Ellis v. Republic Oil Co.* 110 N. W. 20, (Iowa.)

We think it advisable in this connection to notice the second ground of error presented in brief of plaintiff in error to-wit: That it was error to admit in evidence the letter of the assistant manager, to the local agent, for the reason stated, that it added no new fact, but was simply "an inflammatory text for counsel, in an inflammatory case, directed to an inflammable jury." This criticism may be true, yet the fact that it is true does not necessarily destroy its materiality and admissibility as evidence. The fact of the mixture, that plaintiff in error knew it, and sold it as ordinary illuminating oil, was admitted, but there was no admission that the company knew it to be dangerous, when used as coal oil is ordinarily used, and this letter was competent of consideration by the jury, in determining whether the company, at the time of the sale, knew, or had knowledge of facts sufficient to put it upon inquiry with reference to its dangerous qualities. The letter, together with the testimony of expert witnesses, whose testimony was directed to the question as to the extent such admixture would increase the inflammability and dangerous character of the article sold, as compared with the article for which it was sold, was competent of consideration in determining the negligence of the plaintiff in error, and the conclusions drawn by the jury from the evi-

dence so submitted are not, we think, open to question by this court.

It yet remains to connect this dangerous and explosive mixture with the death of these two children; and here we are met with the proposition to be determined wholly from circumstantial evidence. The sufficiency of the circumstances and probative facts shown by the testimony, are challenged as not being sufficient to justify the conclusion reached by the jury, that the death of the children was the result of the explosion of the coal oil and gasoline mixture which the plaintiff had purchased and taken to his home. It would be an exceedingly difficult task to draw an exact line, which would bound the powers of a jury, in concluding that a fact sought to be shown, had been shown by reasonable inference.

In fact, we think no rule could be laid down to meet the requirements of all cases, for each case of this character carries with it its own "ear-marks," and it must be judged by that special insignia as they appeal to our reasoning faculties. In so judging this case it is not necessary that the probative facts established should be such as to amount to a mathematical certainty of the existence of the fact sought to be established, or that by reason of the facts shown a scientific demonstration of the existence of the ultimate fact, could be adduced.

We think that where a known agency is known to exist which is sufficient and liable to produce the result complained of, and is traced to a position in which it might produce such result, and the result has been produced, and there was no other known agency at that point capable of producing such a result, a strong inference is raised that such known agency

was the proximate cause of the injury that follows, and to this extent this case is clear, since the evidence clearly shows the existence of such condition at the time of the fire.

Such inference drawn from such facts alone, might not be sufficient, but taken with the other probative facts presented, as for instance that the sister started to build a fire in the sitting room, shook down the ashes in the stove, found the stove cold and no fire in it; was then called from the stove to assist in dressing the children; Mrs. Deselms stating that she would herself build the fire after breakfast; Mrs. Deselms body found on the floor with her feet close to the stove and her head away from the stove; the door open and one of the hinges broken; kindling, consisting of paper and small wood in the stove, not burned but somewhat charred; the two children dead in the same room with her; the fact that Mr. Bradshaw arrived at the house before the fire had become general in the building and attempted to go in, and was choked with gas and smoke and compelled to retreat, made a second attempt and was again driven out by the accumulated gas and smoke, as he testified, choking him down the worst kind, leads to the conclusion that these deaths were the result of an extraordinary and powerful agency; and proof of what this agency was is shown by the fact that the oil can which contained the mixture of oil and gasoline, sold by plaintiff in error, sitting out in the room where it had not been kept up to that time, with the whole conical top of the can off, points with such an unerring finger to that can and that mixture, as the cause of the death of these persons, as that all men at once reach a satisfactory conclsion as to how these deaths occurred; which takes it out of the realm of

mere conjecture and in view of the fact that no other reasonable explanation or hypothesis has been presented which would account for the frightful result, it is beyond the power of this court to say that the jury were not justified in the conclusion reached by their general verdict.  Under such circumstances the conclusion reached is almost as satisfactory as if it had been reached by reason of the direct testimony of eye witnesses.  The authorities grant to both courts and juries considerable latitude in inferring the existence of the ultimate fact sought to be established from probative facts shown on the trial of the cause.  The author of Cyc. in his text under the title of "Inferences from Evidence," vol. 17, p. 820, says:

"When a material fact is not proved by direct testimony, it may be rationally inferred by the court or jury from the facts which have been so proved, even though the inference be not a necessary one."

The supreme court of the United States in *Insurance Co. v. Wade,* 78 U. S. 440, says:

"It is well settled that if the evidence offered conduces in any reasonable degree to establish the probability or improbability of the fact in controversy, it should go to the jury. It would be a narrow rule, and not conducive to the ends of justice to exclude it on the ground that it did not afford full proof of the non-existence of the disputed fact.  Besides presumptive evidence proceeds on the theory that the jury can infer the existence of a fact from another fact that is proved and most usually accompanying it."

The supreme court of New Hampshire, 13 Atlantic, *Clark v. Manchester,* p. 869, says:

"When a material fact is not proved by direct testimony it may be inferred by the jury, (if it is a case for them)

from the facts which have been so proved, even though the inference be not a necessary one. It is their province to draw proper inferences from such facts, and if, in the exercise of this right, they conclude that the fact in controversy is established, it is as properly proved as if by direct testimony." Citing *Corn v. Doherty,* 135 Mass. 245.

The supreme court of Missouri in *Conner v. Pac. Ry. Co.* 81 S. W. 149, says:

"It is with reluctance that appellate courts interfere with the province of juries in passing upon questions of fact. Whenever from all the facts and circumstances in evidence, a jury may, without doing violence to the dictates of reason and common sence, infer a given fact on account of its known relation to the fact proved, the court should not interpose its own different conclusion."

In fact no court has ever denied the power of a court or jury to infer the existence of a fact from circumstances proved. The only question being as to whether or not the fact inferred was a reasonable inference. If it is a reasonable inference, although not a necessary one, the court would invade the province of the jury in denying to them the right to say that such reasonable inference was the proximate cause of the injury.

We think we could not deny the jury in this case, under the facts shown, the right to conclude that the death of the children was the result of the negligence of the plaintiff in error.

It is urged by the plaintiff in error that the court erred in giving instruction No. 4, to the jury, which instruction is as follows:

"By the laws of this territory, dealers in illuminating oils and gasolines are prohibited from selling any such oils or gasoline until the same shall have been inspected by the territorial oil inspector and have been pronounced of a quality permitted ·to be sold, and any person violating such law is made liable for a penalty, in a criminal prosecution. All illuminating oils or fluids that flash at a less temperature than 120 degrees Fahrenheit, and have not a specific gravity of not less than 46 degrees Baume, that is, all oils that fail to stand both tests, are required to be 'rejected,' and all gasoline used in vapor stoves and gasoline lamps shall have a specific gravity of not less than 70 degrees Baume at a temperature of 60 degree Fahrenheit. Oils and gasolines which do not come up to the tests prescribed by our laws are not permitted to be sold for domestic purposes."

This instruction submitted to the jury the provisions of the Oklahoma statute as a basis for their guidance in determining the question of the negligence of the plaintiff in error in the sale of the oil, and it is urged that such statute was void in that it is utterly unintelligible and an instruction which submits the substance of the statute as a basis for the jury's guidance is, therefore, erroneous.

The point is made that the flash test provided for in the statute and submitted in the instruction, and the specific gravity test therein provided for, are so inharmonious in the result obtained from each that a strict enforcement of the provisions of the statute would exclude from Oklahoma some of the best oils produced in the United States. The principal complaint with reference to the statute arises from the testimony of one Robinson who showed by his testimony that the provisions of the statute requiring oils sold in the Territory of Oklahoma to show a specific gravity of 46 degrees, Baume

test, is unintelligible so far as the test of the best commercial grades of oil are concerned; that in order that the Baume specific gravity test should mean anything to an inspector, such inspector would have to know from what locality the crude oil from which it was manufactured came; that Texas oil shows a test of 38 1-2 to 40 degrees; Kansas, 41 1-2 to 42; Ohio 43 to 47 degrees, and Pennsylvania 44 to 49 degrees; that each are of equal value and safety, possessing merely the variation due to characteristic of the crude oil, of the localities from which they are produced.

From this standpoint counsel argue that it clearly appears that the gravity test has no relation whatever to the safety or quality of the oil, because equally good oil, as shown by the testimony of Robinson, would be excluded from the territory by the test required by the statute. The argument of counsel for plaintiff in error, that certain oils might be excluded from the territory under the statutory tests may be true, and yet we do not see how we could declare a statute void for that reason, or an instruction based thereon erroneous· The statute is one which relates to the general welfare of the people of the territory and is extended as a protection to their lives. Such legislation is within the police power of the territory and a proper subject of legislation and the legislature of the territory having prescribed a test which oil must stand to be lawfully sold within the territory, this court, under this testimony which shows that it is possible to bring this product within the requirements of the law, cannot declare such a law to be unconstitutional. Nor for that purpose could the court hear testimony which tended to show that some other specific gravity test would be equally good or better, as ap-

plied to the general welfare of the people, than that fixed by the legislature. The constitutionality of a law must be determined by its requirements tested by the constitutional limitations upon that subject.

It is urged that the provisions of sec. 4 of the act of the legislature approved March 8, 1899, Laws of 1899, 188, is void because of an unequal punishment therein provided for persons and corporations performing the same act. That section of the act provides that any persons or any employee or agent of any corporation, selling oil and gasoline when the same is not the grade required by the act as found by the inspector of oils shall be deemed guilty of a misdemeanor and punished by fine and imprisonment; and then provides that:

"Any company or corporation who shall furnish in this territory oils or gasoline for sale in this territory of lower grade than herein specified, shall be subject to a fine of $1000.00."

The legislature here manifestly intended to provide a punishment for all persons and corporations violating the provisions of the act. The punishment or imprisonment provided for individuals could not be inflicted upon an artificial person such as corporations, and they therefore made the fine as to corporations heavier than that imposed upon individuals who in addition to their fine suffered imprisonment. Whether this could be rightfully done or not we do not find it necessary to decide in this case, because the constitutionality of this single provision might, if the same were involved in this case, be determined one way or the other without affecting the remainder of the act.

If the punishment here provided for corporations violating the provisions of the act should fail, it would nevertheless be an unlawful transaction to sell in this territory oil which would not stand the test provided for in section 2 of the act, which provisions are the only ones immediately called in question in this case and which we have already held are constitutional.

It is urged that instructions Nos. 5, 6 and 7, submitted to the jury by the court below, each present an erroneous proposition. Counsel in their brief say:

"These three instructions concurrently present the same objection. It is first contended that the plaintiff had no right to go to the jury on the question as to the usual and ordinary purposes for which coal oil is ordinarily used, nor to have submitted to the jury any supposed custom, because those are matters of pleading and practice and the evidence is entirely silent on the subject, as well as being unsupported by any allegation in the petition."

With this contention of the plaintiff in error we are not able to agree. Ordinary coal oil has been in general use so long and the use of it so universal for purposes other than illumination that all persons of ordinary intelligence have knowledge of the general purposes for which it is used, and to make it safe for such uses the legislature has prescribed a test which must be complied with in placing the same upon the market for use in this territory, and it is not within the province of a dealer, after an injury has been inflicted by the use of the oil which he has sold that is not of the standard required by the law, to say that he is not liable for damages arising by reason of such injury occasioned by its use within

the general custom and experience of the people in the usage thereof and which custom is a matter of general knowledge.

Proof of a general knowledge of a custom or usage of a product of this kind is not the subject of expert testimony.

Upon the trial of the case the plaintiff offered a witness, Prof. Holter, to show the customary uses to which the people in general put coal oil, and for the purpose of qualifying him to give such testimony, he was asked:

"State whether or not you have had occasion to learn or observe frequently through out the country or community the uses that people generally put coal oil to?"

To which question the plaintiff in error objected as follows:

"Objected to as incompetent, irrelevant and immaterial under the issues in this case."

The court considering such objection and in sustaining the same used the following language:

"Matters of common knowledge and experience it is not necessary to prove it all, but matters of usage it is necessary to prove."

The question here under consideration is a question of general knowledge of a usage to which coal oil is generally put, and the immediate subject under investigation was whether or not it was generally known that coal oil was used in kindling fires. This inquiry was relevant to the issue because the plaintiff in error in the sale of this oil was bound to know with reference thereto that which was a matter of general knowledge.

In the instructions complained of the jury were advised in instruction No. 7, as follows:

"If you find that the wife of the plaintiff was, at the time of the accident, using the oil to kindle or aid in starting a fire in the stove, you will then determine whether the use of coal oil to kindle or start fires is a usage or custom so general and universal as to be a part of the general knowledge and experience of persons of average intelligence and experience, and if the defendant at the time it sold said oil had reason to believe that it would be used for such purposes."

Manifestly the court here authorized the jury to find whether or not the usage and custom of starting fires with coal oil was so general and universal as to be a part of the general knowledge and experience of persons of average intelligence, and they were advised that if this was not found to be a fact their verdict should be in favor of the plaintiff in error.

What is a matter of general knowledge, as we have stated, is not the subject of expert testimony, nor can the people generally be called upon the witness stand to prove the existence of such a fact, and when the court directed the jury to find against the plaintiff, unless from general knowledge they could determine that it was customary to kindle fires with coal oil, general knowledge was invoked from which and by reason of which, the fact sought to be established could be determined, and what is a matter of general knowledge the jury as well as the court might take notice of. In *Ellis v. Republic Oil Co.* 110 N. W. 23, the supreme court of Iowa says:

"The use of kerosene in kindling fires is too common and too well known for us to say that a person using reason-

able care may not use that agency without being chargeable with negligence."

See Cyc. vol. 16 p. 849, and particularly p. 852, where the author in his text says:

"Jurors may act upon matters of common observation within their general knowledge without any testimony on those matters." Citing 2 Gray, 514; *Murdock v. Summer,* 22 Pick. (Mass.) 156; *Spingler v. Williams,* 67 Miss. 1.

The supreme court of the United States in *Brown v. Piper,* 91 U. S. 42, say:

"Of private and special facts, in trials in equity and at law the court or jury, as the case may be, is bound carefully to exclude the influence of all previous knowledge. But there are many things of which judicial cognizance may be taken. To require proof of every fact as that Calias is beyond the jurisdiction of the court, would be utterly and absolutely absurd. Facts of universal notoriety need not be proved." Citing Taylor's Evid., sec. 4 note 2.

The court having excluded testimony which tended to show that the use of coal oil in kindling fires was a matter of general knowledge, because it was a matter of general knowledge, might properly have advised them in his instructions that proof upon that subject was not necessary and that it might be assumed to be an established fact because of the common knowledge that such fact existed. That such course was not pursued, but on the contrary the jury were instructed to determine whether the use of coal oil to kindle or start a fire is a usage or custom so general and universal as to be a part of the general knowledge and experience of persons of average intelligence and experience, and if the defendant at the time sold said oil had reason to believe it might be

used for such purposes, left it to the jury to determine what the court might have determined, to wit, that the custom of starting fires with the use of coal oil was a matter of general knowledge, and in this we are unable to perceive prejudicial error.

The objection of the plaintiff in error to the refusal of the court to give instruction No. 5, as requested by the plaintiff in error, is based upon the assumption that the law of 1899, is void, because of defects pointed out in section 2 and 4 of said act, and therefore, the law of 1895, (See Laws of 1895, p. 134) is still in force, and said instruction was framed to cover the provisions of that statute. Having heretofore determined that the law of 1899 was not void, but was still in force, such determination dispose of this objection.

The exception to the ruling of the court in refusing instruction No. 11, as requested by plaintiff in error is determined adversely to it in sustaining instructions 5, 6, and 7 given by the court upon the trial of the case.

There remains but one other ground of error complained of and that is that the verdict is excessive. The plaintiff in error has cited many cases from different states in which the courts have held that less sums than that allowed for the death of these children have been held excessive. In each case the action of the court is founded upon the peculiar facts of the case before it.

The legislature of this territory for the purpose of abridging the powers of the jury in assessing excessive damages have fixed limits upon their power to award damages for the death of an individual at $10,000.00. No uniform

and precise rule can be laid down by which the value of a life to those entitled to recover therefor must be measured. The jury under the facts and circumstances of each peculiar case, must within the limits of the statute determine such matter of compensation.

The plaintiff in error has moved for a new trial in this case:

"First, because of excessive damages having been given under the influence of passion and prejudice; and second, error in assessment of the amount of recovery, the same being too large."

With reference to the first ground in view of the fact that no special evidence of passion or prejudice other than the amount of the verdict has been pointed out, the determination of the trial court adversely to this ground was the exercise of a better advised judgment than is possible to be entered here.

With reference to the second ground that the verdict is excessive while yet within the limit of the statute, this court is called upon to interpose its judgment for that of the jury trying the case. We have before us no fact or circumstance which would justify such action, and are therefore content in consideration of all the facts in the case shown by the record to allow the award of the jury to stand.

Finding no reversible error in the trial of the cause the judgment of the court below is affirmed.

Burford, C. J., who presided in the court below, not sitting; Burwell J., concurring in the judgment, but not in all the reasons given for the same; all the other Justices concurring.