REVEL, *et al.* v. PRUITT.

No. 3790.   Opinion Filed August 18, 1914.

. (142 Pac. 1019.)

1.   NEGLIGENCE — Contributory Negligence—Submission of Issues. There was ample evidence of the primary negligence of defendants, and the question of plaintiff's contributory negligence was properly submitted to the jury.

2.   PARENT AND CHILD—Earnings of Child—Emancipation. Under the laws of this state, parents are, ordinarily, entitled to the earnings of a minor child, and may sue and recover same; but the parent may emancipate the minor child, in which event such minor may receive, recover, and retain the fruits of his own industry.

3.   PLEADING—Sufficiency—Implied Allegations. It is a well-established principle of pleading that there need be no direct allegation of a fact if the same otherwise sufficienty appears, or of a fact which is necessarily implied from other averments in the petition.

4. **ESTOPPEL — Pleading — Petition—Conclusions—Emancipation of Child.** The fact that a minor child's earnings have been relinquished to him—that he has been emancipated—is necessarily implied, and will be inferred, from the averments of a petition in an action to recover damages for decreased earning power that is brought by the father as such and as next friend for the minor, and in which the father avers that the minor is entitled to have and recover, in his own suit, such damages; and the failure to specifically allege the son's emancipation does not render such a petition fatally defective, nor does it prevent the introduction of proof of the fact of emancipation.

    (a) Under such circumstances, the acts of the father in prosecuting a suit as next friend for his minor son would estop such father from later maintaining a suit to recover such damages for his own use.

5. **DAMAGES—Personal Injuries—Special Damages—Pleading.** In a suit for damages on account of personal injuries it requires an allegation that obligations have been incurred for medical attention, hospital fees, etc., to justify proof of, or a recovery for, such items, as they are in the nature of special damages.

(Syllabus by Brewer, C.)

*Error from Superior Court, Muskogee County;*
*Farrar L. McCain, Judge.*

Action by Howard Pruitt, a minor, who sues by Y. W. Pruitt, his father and next friend, against O. D. Revel and another. Judgment for plaintiff, and defendants bring error. Affirmed upon conditions.

*Ross & Moss,* for plaintiffs in error.

*Head & Daniels,* for defendant in error.

Opinion by BREWER, C. This is a suit brought by Y. W. Pruitt, as father and next friend of Howard Pruitt, a minor, as plaintiff below, to recover damages from O. D. Revel and Jacob Spangenberg, defendants, on account of personal injuries received by said minor and alleged to have been caused through the negligence of defendants. The petition discloses that Howard Pruitt, a youth of sixteen years of age, was employed by the defendants as "elevator boy," his duties being to operate a passenger elevator in defendants' building; and it is alleged that while in the course of his duties the boy was seriously injured because of defendants' negligence in permitting the elevator, its machinery,

attachments, cables, etc., to get into and remain in a defective condition, and for the failure to inspect the same, thereby causing the machinery to fail to work, causing the elevator to drop suddenly from the landing of the second floor, while the boy was trying to adjust the controlling lever, and through which he was caught between the cage and casing and his leg crushed and mangled so as to render him a permanent cripple, etc. The defendants for their answer filed a general denial and set up the affirmative defense of contributory negligence. A general denial was filed for a reply, and the cause was tried to a jury, which returned a verdict for $1,500 in favor of the plaintiff, upon which judgment was entered in said sum by the court. The defendants appeal on case-made, properly certified, and present several points which they urge ought to reverse the case, and which will appear in the discussion to follow.

1.   One of the contentions is that the demurrer to the evidence should have been sustained; but this point is not well taken and does not need extended consideration. That the defendants were grossly negligent and failed in their duty to the plaintiff, and to all others who had occasion to use the elevator, is abundantly established. In fact it is conceded by counsel in the brief, wherein it is said:

"We concede that the evidence in this case upon the part of the plaintiff established facts from which the jury were compelled to and did determine that the defendants were guilty of negligence in not keeping the elevator in question in repair. The defendants did not attempt by direct proof to dispute the acts upon which the jury based their verdict in making this finding, and without a doubt no other conclusions could have been sanely reached by the jury other than the conclusions which their verdict discloses they did reach."

But, notwithstanding their established negligence, appellants contend that plaintiff ought not to have been allowed to recover, because on the morning of the accident he discovered that there was something wrong with the elevator and became alarmed at its condition, and stopped it at its second floor landing and went and notified the defendants that it was not working properly, and then went back to the elevator immediately and reached over

into the cage and attempted to throw off the control lever, and was in such a position in doing this that the sudden fall of the cage caused the injury; and that therefore the same was the result of plaintiff's own negligence. There might be something in this contention if the plaintiff had known the extent of the derangement and what was the matter with the machinery, and that turning the control lever would cause it to fall as it did; but he knew no such things. He knew something was wrong, and he was afraid of the elevator and so advised the proprietors; but, when he went back to it and saw the control lever in the situation he found it, his attempt to adjust it was a natural one and was likely prompted by a desire to protect the property, inasmuch as, so far as he knew, the elevator was as likely to go up to the roof as down to the cellar. He did not know that one of the cables had been permitted to remain in water in the basement until it was absolutely rotten, and had in fact come entirely apart. Furthermore, if he was negligent in doing what he did do, it would come under the head of contributory negligence, because the primary negligence of defendants is thoroughly established. This phase of the case was submitted to the jury by the court, in very apt and appropriate instructions, where they were in effect told that, notwithstanding defendants' negligence, if plaintiff was also negligent in what he did, and his negligence was a contributing proximate cause of his injury, he could not recover. The Constitution (article 23, sec. 6, Williams' Ann. Ed.) makes the question of contributory negligence a question of fact, in all cases, to be determined by the jury; and this court, under such evidence as is presented here, has neither the right nor the desire to interfere with the verdict on this point.

2. We come now to a somewhat novel point and one which does not appear to have often been before the courts. It is contended that the court erred in permitting plaintiff to recover for loss of time and diminished earning capacity during the period of his minority, and in permitting proof to be made of the boy's emancipation by his father, for the reason that the petition did not allege, in express terms, the fact of such emancipation.

There is no doubt but that under our law the parents are entitled to and may sue and recover a minor child's earnings. Section 4368, Rev. Laws 1910. But it is also the law that the parent may emancipate the minor child and permit him to receive and retain the fruits of his own industry. Section 4380, Rev. Laws 1910. Nor is there any doubt that in this case the boy had been in fact emancipated, had made his own contract of employment with defendants, and received and retained the money paid him for his work, returning to his father a reasonable sum to compensate for his board.

It ought to be conceded, as well, that the father's conduct in this case in asserting in his petition the right of the boy to recover these sums, and by his own evidence permitting and establishing the right to such recovery, has forever estopped him from suing these defendants for his boy's earnings and diminished earning capacity and recovering for the same in another suit.

This has been held in a well-considered opinion by Mr. Justice Valentine in *Abeles v. Bransfield,* 19 Kan. 16, and, as the point has not been often met with, we quote somewhat at length from his opinion therein:

"As she commenced this action in her son's name, as his next friend, and set forth in the petition said loss of time and said expenses as a part of her son's damages, and asked judgment in favor of her son for such damages, it must now be conclusively presumed that she relinquished and gave to her son all claim that she might have had for compensation for such loss of time and such expenses. Whether the jury included anything in their assessment of damages for said loss of time and said expenses, we cannot tell from the record; but for the purposes of this case we will presume that they did. We will also suppose that Mrs. Bransfield was, as is claimed by plaintiff in error, the only surviving parent of the plaintiff. We will also suppose that she was entitled to his services, and was responsible for his support and necessary medical relief and assistance. We will also suppose that she never in any manner relinquished her right to his time and services, except so far as she did so by the commencement and prosecution of this action. And then with all these suppositions, we shall hold that by the act of commencing and prosecuting this action Mrs. Bransfield gave to her son all her claim for compensation for his loss of time and expenses oc-

casioned by said accident. Whether she had the power to so give the same to her son, so that he might recover for the same in his own name, is the most difficult question in the case. Counsel have not enlightened us upon this question. Whether there are any authorities upon the question or not, we do not know. We must therefore decide the question upon first impressions. A parent ought to have such power. By allowing the child to recover for loss of time and expenses, it avoids the necessity for two suits. If no such power exists, then the parent must sue for the loss of time and expenses, and the child must sue for the injury, the pain, suffering, etc. This would require two suits where one ought to be sufficient. The law ought to be such that both actions might be united into one. It would save a great deal of trouble and expense. And no insuperable objection can be urged against such union, that we are aware of. Primarily, we suppose that the right to compensation for loss of time and expenses belongs to the child. It is a part of his capital with which to procure his maintenance, support, and education. But as the parent, as his guardian or trustee, is responsible for all these, the parent, as such guardian or trustee, is allowed, in his or her own name, to recover such compensation. This is a privilege to the parent. But the parent may, as we think, waive this privilege and allow the child to recover in his own name. And where the parent commences the action for such compensation, in the name of the child, and as the next friend of the child, as Mrs. Bransfield did in this case, we think it must be conclusively presumed that the parent waives the privilege to sue for the same in his or her own name, and gives the same to his or her child, or perhaps, more properly speaking, it gives to the child the power to recover and use what really belongs to the child."

And in *Zongker v. People's Union Mercantile Co.,* 110 Mo. App. 382, 86 S. W. 486, it is said:

"He (the parent) is presumed, however, to be familiar with the contents of pleadings filed in behalf of the plaintiff, and to sanction and direct the prosecution of the claims made therein, and, when he stands by without objection and permits a claim of lost earnings to be pressed on behalf of the infant plaintiff and recovery of them follows evidence showing emancipation, such next friend must be held to have surrendered voluntarily his right to such earnings. It was proper to submit to the jury the question of plaintiff's emancipation. *Dierker v. Hess,* 54 Mo. 246; *Ream v. Watkins,* 27 Mo. 519 [72 Am. Dec. 283]; *In re Dunavant* [D. C.] 96 Fed. 542; *Scott v. White,* 71 Ill. 287."

But, as we understand the briefs, there is not much controversy as to the law thus far stated. Appellants narrow the point down to the fact that the petition ought to have specially averred the matter of the son's emancipation before proof could be introduced to show the same and thus justify a recovery. But we think this position unsound. It is a thoroughly established principle of pleading that there need be no direct allegation of a fact if the same otherwise sufficiently appears, or of a fact which is necessarily implied from the other averments in the petition. 31 Cyc. 48, and authorities cited.

Is not the fact of emancipation necessarily to be inferred here from the other averments made? We think so. The father in his suit avers the relation of parent and child, and asserts the right of this boy to have and receive these sums of money from the defendants. It has already been shown that this would bar the father from afterwards asserting a right to these sums. We think the allegations are equivalent to saying, coming as they do from the father, that these earnings during minority have been relinquished to the son; that is, that he has been emancipated. Therefore we hold that the fact of emancipation is to be necessarily inferred from the other allegations in the petition, and that therefore it was not error to permit the father to testify to the same.

3. The next point made is that the court erred in permitting plaintiff to prove, and recover for, obligations incurred for medical attention, hospital fees, etc., and this contention is also based upon the fact that there is no allegation in the petition that any damage had resulted because of these things. We believe the appellants are right as to these items of damages. The fact that such expenses had been incurred and obligations assumed therefor, and the amount of same, are not facts to be inferred necessarily from the allegations of the petition. They are in the nature of special damages, and we think, under the great weight of authority, must be specially pleaded and proven, and on this point the contention of the appellants is sustained; but this does not result in a reversal of the case.

The proof erroneously admitted, as to the amount of these items of damage, is certain and specific as to the amount; the sum being $200. While, of course, we do not know that the jury awarded the full sum shown by the evidence on this account, yet we shall assume that it did, giving the defendants, by such assumption, the benefit of the doubt; and will offer plaintiff the right to enter a *remittitur* within 30 days after the filing of this opinion in the sum of $200, thus curing the defect and striking out the erroneous amount awarded in the verdict.

There are no other points made in the case that would be decisive and change the result, and we will therefore not take further time in discussing the same. This case should be, therefore, affirmed, upon the entry of the *remittitur* as above permitted; otherwise it should be reversed and a new trial ordered.

By the Court: It is so ordered.