## HENRYETTA COAL & MINING CO. v. O'HARA.

No. 4565. Opinion Filed July 20, 1915.

(150 Pac. 1114.)

1. **APPEAL AND ERROR — Case-Made — Settling — Stipulation.** Where the record shows a stipulation that the case-made contains a full, true, correct, and complete transcript of all the proceedings had in the cause, including all motions, orders, pleadings, evidence and judgment had in said cause and that the same is a true, full, correct, and complete case-made, which stipulation is signed by counsel for both parties, the trial judge may settle and sign the same without further notice.

2. **TRIAL—Instructions—Cure of Error.** It is correct practice to succinctly state the issues presented by the pleadings, to the jury, but, if such statement is imperfect, it is cured if the trial judge fully and clearly charges the jury on all the issues presented by the pleadings and evidence.

3. **TRIAL—Submission of Issues—Conflicting Theories.** Where a case is tried in the lower court on conflicting evidence and theories, it is proper for the court, in its charge, to present both aspects of the case to the jury, and, when this is done, it cannot be said that the charge is conflicting and misleading.

4. **PERSONAL INJURY—Assistant Mine Foreman—Instructions.** The charge in this case considered, and **held** free from prejudicial error.

5. **DAMAGES—Personal Injury—Amount of Recovery—Question for Jury.** In an action for damages for personal injuries caused by the negligence of the defendant, where the plaintiff introduces evidence of his age, his expectancy of life, his physical condition prior to and since the accident, the character of the injury, and the probable effect it will have on his earning power in future, and the wages he was getting when injured, the amount of dam-

ages is largely left to the good sense and sound judgment of the jury, as it is impossible to furnish direct evidence of the specific loss. The verdict is, however, always subject to the approval of the trial judge.

6. **APPEAL AND ERROR—Disposition of Cause—Excessive Recovery—Remittitur.** Where the trial court permits the plaintiff to introduce evidence as to the amount he has become liable for for doctor's and drug bills, when there is no allegation in the petition to support it, the judgment will not be reversed, if otherwise free from error, but the plaintiff will be required to remit the full amount testified to as due for such matters.

7. **SAME—Verdict—Passion or Prejudice.** Where there is no evidence that the verdict was induced by passion or prejudice other than its amount, and the trial court approves it, this court will not set it aside on that ground, unless there is an abuse of discretion.

8. **DAMAGES—Personal Injuries—Excessive Recovery.** Under the evidence in this case, this court cannot say that the verdict is excessive, or that the trial court abused its discretion, except as to the amount of $500 for doctors' bills and drugs, which the plaintiff is required to remit.

9. **APPEAL AND ERROR—Briefs—Citations..** The attention of the profession is called to rule 8 of this court (38 Okla. vi, 137 Pac. ix), requiring that citations of cases from courts of this state must be made from the official reports, and, in case of failure so to do, rendering the brief subject to be stricken from the files.

(Syllabus by Devereux, C. )

*Error from District Court, Okmulgee County;*
*Wade S. Stanfield, Judge.*

Action by Michael O'Hara against the Henryetta Coal & Mining Company. Judgment for plaintiff, and defendant brings error. Affirmed on condition.

This was an action for personal injuries alleged to have been occasioned by the negligence of the plaintiff in error, and the petition, in substance, is as follows: That the plaintiff below was engaged as assistant mine foreman in the defendant's mine, and was in the regular prosecution of his duties as such assistant mine fore-

man.   That in performing his duties he was compelled to pass through and along a certain entry or hauling road in said mine, wherein he received his injuries.   That the hauling was done by animal power, and it was necessary for men to pass and repass through this hauling way from their work.   That for a distance of approximately 350 feet from the opening of this entry there were no working rooms turned off, and no shelter holes as by the law required in such places.   That the road was so narrow that it was impossible for a man on foot to pass a loaded car on either side of this entry, and that the condition of the entry was extremely unsafe and dangerous, and had been so for a long time prior to the injury, and that the conditions were well known to the defendant below, but that it had recklessly, negligently, and with utter disregard to the safety of its employees, permitted this condition to continue in violation of law, knowing that this entry was unsafe and dangerous.   That the plaintiff below notified the foreman of the unsafe condition of this entry, but failed to enter it on his record book, or to take any steps to place the entry in a safe condition.   That there was a heavy grade of about two per cent. which caused a higher rate of speed of all coal cars when moving toward the opening of the entry, and that this grade was such as to necessitate the use of sprags and brakes, and that this was known to the defendant, and had been so known for a long time prior to the injury, but that the defendant negligently, carelessly, and recklessly failed and refused to supply brakes or sprags, although knowing that it was required by law so to do.   That there was not a distance of four feet, on the day of the accident, between a car passing along this entry and the rib on either side, and that this con-

dition had existed for a long time prior thereto, and was well known to the defendant, and the defendant recklessly and negligently failed and refused to remedy this condition, though knowing such condition was unsafe, dangerous, and contrary to law. That plaintiff, while passing through this entry or hauling road, was recklessly and negligently struck by the defendant's coal car and permanently injured.

The defendant's answer was: First, a general denial; second admitted that it was a corporation engaged in coal mining, and that on or about the 4th day of October, 1911, the plaintiff, while in its employ, sustained personal injuries, but not so serious as alleged in the petition; third, the defendant pleaded contributory negligence; and, fourth, that it had fully complied with the duties enjoined on it by law, which would have contributed to the safety of the plaintiff at the time and place named in the petition. There were other allegations in the answer, but they were stricken by the court on motion, and such action of the court is not assigned as error in this court.

It appears from the plaintiff's evidence: That he was engaged in his duties in the mine, and while he was on his round examining the working places he noticed that one of the drivers was behind time in coming out of the entry in which the accident occurred, with his load, and that the plaintiff below went into the entry to ascertain the cause. That this entry was a narrow track about three feet wide. That the wall was built on each side within six inches of the car, and that in some places the car scrapped into the walls for the reason that the entry was too narrow to permit the passage of the car. That in entries of this kind there should be shelter holes

for men to seek refuge in while cars are passing, but in the one in question at the time of the injury a portion of these shelter holes had been walled up so that they could. not be used. That on the day of the accident, the plaintiff had gone about 300 to 350 feet when he saw the driver coming toward him. That at this place the road upon which the cars ran was downgrade about two feet in the hundred, and the cars were coming with considerable speed. That he made an effort to get out of the way, but found each of the entry holes walled up and was unable to get in them. Finding it impossible to get into a shelter hole, as a last effort to save himself, he found a place where the rocks had worked out of the wall, and stepped on them, and thus tried to get clear of the car, but slipped and fell on the track and was hit by the cars. In order to save himself, he got hold of the car and was dragged some distance, when he lost consciousness. The plaintiff further testified as to his supervision of this entry that:

"He (the superintendent) never gave me no jurisdiction over the entries. I had no jurisdiction over the entries. I didn't have the authority to clean up a shovel full of dirt on the entries without his permission. During one idle day he ordered the men out himself. They did not know there was going to be work. He told me there would be work the next day, and he ordered the men out himself, and the next morning he came down on the bottom and directed the men where to commence cleaning up the entry and gave me orders to take them to work. He didn't give me power to take the men and clean up the road where I knew it needed cleaning. He directed the work himself. He ordered the men to go to these places to work and told me to take them. The second day I made a thorough search of the mine; walked all through the working places. In the entry where I

was hurt I found there was a wall built. The entry was like a narrow track, a railroad track, about three feet wide, probably a little wider, with a wall built on each side within six inches of the car, and some places the car was cutting into it, one place for 450 feet. There was a space of 14 inches between the car and these walls for a distance of 400 feet. I reported to Mr. Haynes that this and other entries needed cleaning up and put in compliance with the law. He said he would conduct these entries and clean them up on idle days. I did not make any written memorandum any further than in my daybook. Sid Haynes took that power from me. He made all the entries in the book himself, but I couldn't say that he made any entry in his book about what I told him. I never saw his book. I thought he was taking care of the entries and taking that much burden off of me. I did not take any of the men and repair any of the places in the entries, as I could not put a man to work at anything in the mine without consent of Mr. Haynes. I had authority at that time to hire the miners that worked by the ton, in the rooms that run from the entry. He reserved the right to hire the entrymen and tried to stop me from hiring some day hands. He instructed the work, such as cleaning up or making any improvements in the mine. I never claimed, or no other man that ever worked for him, more privileges. My understanding was when I went there that I was hired by the month, but when I found out how Mr. Haynes had humiliated me from the position of pit boss to his assistant I came to Mr. Wise. I told him that I didn't want a monthly salary because I didn't have any voice in the mine as foreman, that I would accept $4 a day for times actually worked, and that is the way I was paid."

The driver of the car, Louis Fisher, testified:

"I was working for defendant company during October, 1911, as a driver, working in the entry where plaintiff was injured. Have been in the business about ten years. I had been working only a couple of days

when he got hurt; I had been off on account of sickness. It was my duty to get the coal out. Drove a mule hitched to the cars. The cars ran on a track which was about three and a half feet wide. The cars flared at the top, and they carried from 17,000 to 20,000 pounds of coal each. Usually pulled six or seven cars on a trip. I rode on the front end of the front load. I wore a lamp on my head for a light. A couple of days after he was injured, I went back to work, and the conditions were about the same in and along the entry. It was about 15 or 16 rooms turned from the mouth of the entry back to where he was hurt; don't know the distance. There was hardly any room between the cars and the walls in that entry. Some few places the sides of the cars were on the ribs. It is downgrade coming out of the entry. The mule has to hustle to keep out of the way. At the time of the accident I was coming pretty fast. O'Hara was running, and I overtook him. When I first saw him, he started up as I came over the hill. The entry was straight. He ran from one side to the other three or four times. Just as he got out of the way on some rocks, the mule's hip was about to him. At the place where he was, there was about 12 inches between the side of the car and the wall. Down at the top of the car wheels the distance couldn't have been over four or five inches. The sides of the wall came up sloping. It was between 30 and 50 feet from the place where the car struck him to where it stopped. He was down in beside the trip dragging. The cars passed him, some of them, and then he would get hung again on some of them and they would take him on. There were no brakes on any of the cars, and I never carried any sprags. It was at the mouth of 21 room where I first saw him. After the car stopped, I went for help to get him out. I was sick and too weak to lift the cars. I saw him at the top of the mine. He had a whole lot of cuts on his head, one on the side of his jaw, and over his eye. He had a blanket over him; couldn't see the rest. When I saw Mr. O'Hara in the

entry, I didn't do anything; I couldn't. If I had tried to stop them I would have got mine. If I was like I am now, I might have stopped the trip, but I was sick and couldn't stop it. The day before I had a boy helping me switch cars, as I couldn't switch them. There wasn't anything there with which I could have stopped them. If I had had my health I would have stopped them if I could. If I had had brakes, I could have slapped them on. If I had had sprags, I could not have used them, as I did not have room to get off."

The defendant introduced evidence contradicting this testimony, tending to prove that the plaintiff was the mine boss and had full charge of this entry, and if it was in an unsafe condition it was entirely the plaintiff's fault, as, under the mining laws of Oklahoma, it was his duty to keep this entry in a safe condition, and to see that the shelter holes were properly and safely maintained. The defendant also introduced evidence that these shelter holes were properly maintained, and at the place where the plaintiff claimed he was injured there was room between the cars and the walls for a man to stand in safety while the cars passed. There was a direct conflict in the evidence, both as to the condition of the entry and the duties of the plaintiff. There was also evidence that the plaintiff was about 58 years old, and was, up to the time of the accident, strong and healthy and able to do a hard day's work; that he was confined to his bed about three months as a result of the accident, and since that time has suffered constant pain, and it appeared from the medical testimony that one of the broken ribs had punctured the lung, and that, if the plaintiff attempted to do manual labor, in the language of the physician, "he would puff like a wind-broken horse." The defendant below introduced evidence that the injuries of the plaintiff

were not as severe as claimed, and especially that the injury claimed to his back was not as severe, as he was hump-backed long prior to the accident, and on this, also, there was a direct conflict in the evidence. There was no allegation in the petition that the plaintiff had incurred any expense for medicines or drug bills, but, over the objection of the defendant, he was allowed to testify as follows:

"Q. State whether you have paid out or obligated yourself to pay out any amounts for medical attention which you received?   *   *   *   A. Well, most all the drug stores in Henryetta I have bought drugs in. I have paid bills and owe bills right now to the doctors. Q. State, as near as you can, the amount of actual money paid out by you for medicine or medical attention, or the amount you have become obligated to pay? A. From my actual expenses, if I pay it all myself, that is for doctor bill and medical attention, if I would pay it all myself, it would amount to about $500. By Mr. Moss: To which defendant objects and moves to strike the answer on the ground that the same is not responsive to the question and is incompetent, irrelevant, and immaterial, and not tending to prove an issue in this case. (Question withdrawn.) Q. Just state, Mr. O'Hara, what your own actual knowledge has been that you yourself have paid, or what you become obligated to pay by reason of this injury?   *   *   *   A. About $150 I am obliged to pay myself."

It will be noticed that, while the question to state as nearly as he could the amount of actual money paid out for medicines and medical attention was withdrawn, the answer thereto, that it would amount to about $500, was not stricken by the court, nor the jury instructed by the court not to consider it. Among other things, not necessary to set out, the court instructed the jury as follows:

"No. 4.   You are instructed that it was the duty of the plaintiff in this cause upon his part to use ordinary care and in the use of ordinary care to use ordinary observation to avoid being injured by the defendant or any of its employes, and if you find from the evidence in this case and all the facts and circumstances proven upon the trial, including the experience of the plaintiff as a minor and as a foreman of mines and his knowledge of the condition of the entry in question, that the plaintiff did not exercise ordinary care, and was thereby injured, then your verdict must be in favor of the defendant and against the plaintiff.

"No. 5.   You are instructed that in all hauling roads on which hauling is done by animal power, and whereon men have to pass to and from their working places, holes for their shelter which shall be kept clear of obstruction shall be made at least every 30 yards, and kept whitewashed; but shelter holes shall not be required in entries from which rooms are driven at regular intervals not exceeding 50 feet, where there is a space of four feet between the car and the rib.

"No. 6.   You are further instructed that it did not devolve upon the defendant to keep the plaintiff in this case absolutely free and safe from danger or to insure the plaintiff against accident; but it was the duty of the defendant, except in so far as it may have been excused therefrom by the duty of the plaintiff in this case, under the evidence, to comply with the laws of the State of Oklahoma controlling the operation of mines, and to use ordinary care, prudence, and skill in the management of its business, for the protection of plaintiff; and if you believe from the evidence that the defendant failed to provide shelter holes as defined in instruction 6 in these instructions, and failed to exercise ordinary care in the management of its business for the protection of the plaintiff in order to provide a reasonably safe working place for the plaintiff, and that the injury of the plaintiff was caused by such failure on the part of the defend-

ant without fault or negligence on the part of the plaintiff, then your verdict should be for the plaintiff for such an amount as you, from all the facts and circumstances in evidence in this case, believe he is entitled to recover, not exceeding, however, the amount prayed for in plaintiff's petition, to wit, $15,360.

"No. 7. The jury are instructed that one of the contentions in this case on the part of the plaintiff is that he was not mine foreman within the full meaning and contemplation of the law of the State of Oklahoma, but that his authority and control was limited and curtailed by the superintendent of said mine. On the part of the defendant, it is contended that he was mine foreman and vested with all the powers and duties of said mine foreman, free from the control and interference from the superintendent of said mine, and that in determining this fact, you shall take into consideration all of the evidence introduced on the trial tending to establish the issue as to what position plaintiff actually occupied at the time of the alleged injury; and while the evidence as to what the plaintiff was, at said time, called by those with whom he came in contact in the performance of his duty, should be taken into consideration by the jury in determining the question, nevertheless the question to be determined by you is not what he was in fact called, but what in fact really were his powers and duties under his employment by the defendant in this case.

"No. 8. You are instructed that a mine foreman and pit boss are synonymous terms, and that there is no difference between the duties of the one and the duties of the other. In other words, they are the same as a matter of law.

"No. 9. You are instructed that the duties of a mine foreman are to have charge of the inside operations of the mine, to devote the whole of his time to his duties in the mine when the mine is in operation, to keep a careful watch over the traveling ways, to see as far as possible that all dangerous rock overhead on traveling and

hauling ways is taken down and secured against falling therein, and to see that on all hauling roads where hauling is done by animal power and whereon men have to pass to and from their work, shelter holes, clear of obstructions, shall be made at least every 30 yards, and to visit and examine every day every working place therein while the miners of such places are or should be at work therein, and to prevent every employee of the mine from working at any unsafe place therein unless it be for the purpose of making unsafe places safe, and that the mine foreman must have a certificate of competency issued by the state board to act in that capacity, and that the person employed by defendant who possessed this qualification and whose duties were just stated was the mine foreman.

"No. 10.   The proximate cause of the injury is a cause which directly produces the injury without the intervention of any intermediate, independent and efficient cause without which the accident would not have occurred, and a cause is not a proximate cause when the intermediate or independent cause directly produces the accident.

"No. 11.   You are instructed that if you find from the evidence that the plaintiff was the mine foreman of the defendant on October 4, 1911, and had been such mine foreman for a sufficient length of time prior to the accident complained of in this case, and with sufficient authority over men and appliances to have permitted the plaintiff, by using all the means under his control, to have opened rooms of entry along said hauling way or to have provided shelter holes as defined in these instructions, so that they would have afforded shelter for persons therein, and that the plaintiff failed and neglected to do so, and that the failure and neglect to do so on his part was the proximate cause of his injury, then and in that event he cannot recover in this case.

"No. 12.   You are instructed that the Constitution of the State of Oklahoma contains the following provision:

'The common-law doctrine of the fellow servant, so far as it affects the liability of the master for injuries to his servant, resulting from the acts or omissions of any other servant or servants of the common master, is abrogated as to every employee of every railroad company and every street railway company or interurban railway company, and of every person, firm, or corporation engaged in mining in this state; and every such employee shall have the same right to recover for every injury suffered by him for the acts or omissions of any other employee or employees of a common master that a servant would have if such acts or omissions were those of the master himself in the performance of a nonassignable duty.'

"No. 13. For two or more persons to constitute fellow servants they need not at the time be engaged in the same particular work. It is sufficient if they are in the service of the same employer, engaged in the same common work, and performing duties and services for the same common work, for the same general purpose. Within this rule one engaged in hauling coal from a mine by means of a horse or team, and those engaged in blasting and loading such coal in the mine, are all employed by a common master, are fellow servants.

"No. 14. You are instructed that in the event you find from the evidence that the plaintiff was injured, as alleged in his petition, while in the employment of the defendant in the mining of coal within the State of Oklahoma, by reason of the act or omission of any other employee or employees of the said defendant, and not by his own fault or negligence, then the plaintiff has the same right to recover from the defendant for the injuries suffered by him as though the same were occasioned by the act or omission of the defendant himself.

"No. 15. The court, instructs the jury that, if you find that the defendant is liable, then you should give the plaintiff such damages as he has proven in this case, not exceeding the amount named in the petition, and in

estimating such damages you must take into consideration the permanent injury to the plaintiff, the shock to his system, his pain and anguish, and a fair recompense for the loss of what he might otherwise have earned, and has been deprived of the capacity for earning by the wrongful act of the defendant.

"No. 16. The jury are instructed that even should they find from the evidence that the plaintiff was in fact mine foreman, and should they find that the entry wherein the plaintiff was injured was in full compliance with the law with regard to shelter holes and places of safety, nevertheless, should they find that such entry was used both as a hauling road for hauling coal by animal power and a passageway for men going to and from their work, that such entry contained such a grade as to necessitate its being supplied with sprags or brakes, that the fact of such necessity was known to the defendant, but was unknown to the plaintiff and by the use of ordinary diligence in the performance of the duties of mine foreman could not have been discovered by the plaintiff prior to the injury, and should they further find that the injury to the plaintiff was the direct and proximate result of the negligence of the defendant in failing to supply such entry with sprags or brakes as aforesaid, and that plaintiff was without fault, then your verdict should be for the plaintiff in such amount as you may find him entitled to."

A number of instructions were requested by the defendant, but we do not set them out, as in our opinion, in so far as the defendant was entitled to them, they are fully covered by the charge given. There was a verdict for the plaintiff for $6,416, motion for new trial, which was overruled, exceptions saved, and the defendant brings the case here on petition in error and case-made.

*Jas. S. Ross* and *L. D. Threlkeld,* for plaintiff in error.

*H. E. P. Stanford, I. H. Cox,* and *Cochran & Ellison,* for defendant in error.

Opinion by DEVEREUX, C. (after stating the facts as above). A motion has been made in this case to dismiss the appeal because the case-made contains no record of any notice ever having been served upon the defendant in error, or any of his counsel, of the time and place when the case-made would be presented to the trial judge for settlement and signing, because the defendant in error never waived the right of notice of the time and place when the case-made would be presented to the trial judge for settlement, and no amendments to the case-made were suggested by the defendant in error, and no notice was ever served upon the defendant in error, or any of his counsel, of the time and place when the case-made would be presented for settlement, and neither the defendant nor his counsel were present when the case-made was signed and settled. This motion must be overruled. It appears in the case-made as follows:

"It is hereby stipulated by and between the parties hereto that the foregoing case-made contains a full, true, correct, and complete transcript of all the proceedings had in said cause, including all motions, orders, pleadings, evidence, and judgment had in said cause, and that the same is a full, true, correct, and complete case-made.

"[Signed]                                          ROSS & MOSS,
          *"Attorneys for Plaintiff in Error.*
      "STANFIELD & COCHRAN, and I. H. COX,
          *"Attorneys for Defendant in Error."*

The stipulation in the above form is sufficient to authorize the trial judge to settle and sign the case-made

without further notice. The object of the notice is to give the defendant in error an opportunity to make any objection to its settlement, and when he has stipulated that the case-made is a full, true, and perfect case-made, to require a further notice that the trial judge should certify to what is already agreed, would be a pure formality.

The cases cited by defendant in error are not in point. *Thompson v. Fulton*, 29 Okla. 700, 119 Pac. 244, was dismissed because a joint judgment was rendered against two defendants, and as no extension of time was asked or granted to make and serve a case-made on one of them, and after the expiration of the time to serve it the case-made was presented for settlement without notice to such joint defendant, and as the time had expired within which to serve the case-made, and no extension had been granted as to the joint defendant, it was held that no valid case-made could be settled as to him. *Harrison v. Penny*, 28 Okla. 523, 114 Pac. 734, is also cited; but we have examined the original record in this case and find that the stipulation was only signed by counsel for the plaintiff in error. The case therefore is not in point. However, the question now under consideration was passed upon by this court adversely to the contention of the defendant in error in *Pioneer Tel. & Tel. Co. v. Davis*, 26 Okla. 205, 109 Pac. 299, and in *First Bank of Maysville v. Alexander*, 47 Okla. 459, 149 Pac. 152, and in *Charles v. Hillman*, 48 Okla. 549, 150 Pac. 461, in which last case it is said:

"Where notice of the time and place of signing and settling the case-made is not given or waived, the appeal will be dismissed, unless counsel have stipulated in the case that it is true and correct."

The motion will, therefore, be denied.

Coming to the merits of the case, the first assignment of error is that the court in its charge did not correctly state the issues to the jury; but an examination of the entire charge shows that the jury were specially instructed on every issue raised by the pleadings, and we think this is sufficient. *C., R. I. & P. Ry. Co. v. Bentley*, 43 Okla. 469, 143 Pac. 179. As will be seen from a summary of the pleadings and evidence above set out, the cause was tried on conflicting theories and evidence; each party introducing evidence tending to support his theory of the case and the allegations of his pleadings. On the part of the plaintiff, it was contended that, while he was employed as mine boss originally, yet he was not allowed to perform the duties of the office, but the defendant authorized its superintendent to take charge of the duty of keeping the entries in a safe condition, and providing the shelter holes, and in support of this the plaintiff testified that he discovered the dangerous condition of the entry in which he was injured on the second day of his employment, and reported it to Haynes, who said that he would look after these entries and clean them up on the first idle day, and that Haynes took the power away from him to superintend this part of the mine, and in consequence of which he told Haynes that he would go back to the *per diem* pay instead of a monthly salary. The court in its sixth, seventh, fourteenth, and sixteenth instructions fairly gave to the jury the plaintiff's theory, and to these instructions the defendant below excepted. On the other hand, the defendant contended that the plaintiff was the mine foreman, as provided by the laws of Oklahoma (Rev. Laws 1910, section 3983), and that if there was any defect in the

entry or shelter hole he was entirely at fault, and that
he could not recover in this action; that, under the law
above cited, he was given complete authority and control
of these entries, and it was his duty to close them if
they were not kept in a safe and proper manner. The
evidence of the defendant conflicted squarely with the
evidence of the plaintiff on this question. In addition,
the defendant introduced evidence tending to show that
the plaintiff was guilty of contributory negligence, and
that, as a matter of fact, there was no negligence on
the part of the defendant. The defendant's view of the
case was fairly presented to the jury by instructions 4,
9, and 11. It is charged in the brief of the plaintiff in
error that this charge is conflicting, and therefore must
have misled the jury; but after a careful consideration
thereof we cannot agree with this contention. As we
have said above, this case was tried on diametrically
opposing theories, and on conflicting testimony, and in
its charge the court necessarily presented these conflict-
ing views to the jury with instructions to guide them in
whatever view they should take of the evidence.

Objection is also made to the fifteenth paragraph
of the charge in regard to the measure of damages. We
think this charge is substantially correct. In *Union
Pacific Ry. Co. v. Dunden*, 37 Kan. 1, 14 Pac. 501, it
is said:

"It is next claimed that the trial court erred in in-
structing the jury that if they found for the plaintiff
they could use their common knowledge in assessing his
damages, without evidence as to the amount thereof. The
language of the instruction may perhaps be criticized,
but the instruction, as applied to this case, was neither
erroneous nor misleading. In such a case as this the
jury may estimate the pecuniary damages from the

facts proved, in connection with their own common knowledge and experience in relation to matters of common observation. * * * How this pecuniary damage is to be measured or what shall be the amount, must be left largely to the discretion of the jury. The court undoubtedly intended by the instruction to inform the jury, and they must have so understood, that if they found for the plaintiff they could use their own common knowledge in assessing his damages, without direct evidence of the specific pecuniary loss. * * * It is impracticable to furnish direct evidence of the specific loss."

In *Railroad Co. v. Barron,* 5 Wall. 90, 18 L. Ed. 591, it is said:

"The damages in these cases, whether the suit is in the name of the injured party, or, in case of his death, under the statute, by the legal representative, must depend very much on the good sense and sound judgment of the jury."

See, also, *Waters-Pierce Oil Co. v. Deselms,* 18 Okla. 107, 89 Pac. 212: *Id.,* 212 U. S. 159, 53 L. Ed. 453.

The next assignment of error is in allowing evidence of the obligation to pay doctor's bills and for drugs when there is no allegation in the petition to support the claim, taken in connection with the charge that the plaintiff might recover such damages as he has proven. This was error, but it does not necessarily require a reversal of the judgment.

In *Revel v. Pruitt,* 42 Okla. 696, 142 Pac. 1019, it is said:

"The proof erroneously admitted, as to the amount of these items of damage, is certain and specific as to the amount; the sum being $200. While of course we do not know that the jury awarded the full sum shown by

the evidence on this account, yet we shall assume that it did, giving the defendants, by such assumption, the benefit of the doubt; and will offer plaintiff the right to enter a *remittitur* within 30 days after the filing of this opinion in the sum of $200, thus curing the defect and striking out the erroneous amount awarded in the verdict."

In the case at bar there was evidence from which the jury might have added $500 to the amount of the plaintiff's recovery, on account of the improperly admitted evidence. While, as in the Revel Case, we cannot say that they did, yet we will follow the precedent set in that case.

Complaint is also made that the damages awarded by the jury were so excessive that it of itself disclosed that the verdict was rendered under the influence of passion and prejudice against the plaintiff in error. The trial judge approved this verdict, and by so doing necessarily found that the jury were not influenced by passion or prejudice. In *Waters-Pierce Oil Co. v. Deselms*, 18 Okla. 108, 89 Pac. 212, in passing on the same question, the court says:

"With reference to the first ground, in view of the fact that no special evidence of passion or prejudice other than the amount of the verdict has been pointed out, the determination of the trial court adversely to this ground was the exercise of a better judgment than is possible to be entered here."

See, also, *Rhyne v. Turley*, 37 Okla. 159, 131 Pac. 695.

The case of *Reed v. C., R. I. & P. R. R. Co.*, 79 Iowa, 188, 37 N. W. 149, is in some respects like the case at bar. The court says:

"The plaintiff at the time of the injury was 65 years of age. He was a farmer by occupation, and as we infer, he is the owner of the farm on which he resides. By the collision he was thrown headlong from the wagon, and two or three of his ribs broken toward the back near the shoulder blade. The broken ribs punctured his lung, so that air escaped therefrom, and inflated the surrounding tissues."

The jury in this case returned a verdict for $8,250, and the court held that the same was not excessive.

We cannot sustain the assignment of error.

Before closing, we wish to call the attention of the counsel to rule 8 of this court (38 Okla. vi, 137 Pac. ix), providing that in citing cases from courts of this state counsel are required to cite the volume and page of the official state reports, and such failure to comply with this rule will render briefs subject to be stricken from the files. This rule is not being complied with as strictly as it should be, and we wish to call attention to the fact that under the rule briefs which do not comply therewith are liable to be stricken.

We therefore recommend that the judgment be affirmed upon the entering of a *remittitur* in this court of $500 within 30 days after the filing of this opinion, and, in case such *remittitur* is not entered within said time, that this judgment be reversed, and the case remanded for a new trial.

By the Court: It is so ordered.