(15 Misc. Rep. 80.)

STOTT v. CHURCHILL et al.

(Common Pleas of New York City and County, General Term. December 23, 1895.)

1. NEGLIGENCE—HOTEL KEEPER—INJURY OF GUEST.

Plaintiff, while a guest in defendant's hotel, was injured by the breaking of the machinery of a passenger elevator at a place where it had become weakened by corrosion. It was shown that the elevator had been in use 14 years, and that, when last inspected at defendant's instance, the parts breaking were not examined. *Held*, that defendant would not be relieved from liability by showing a compliance with the ordinary mode of inspection, but that the question of negligence was one of fact, under all the evidence.

2. INN KEEPERS—DUTY TO PROTECT GUESTS.

An hotel keeper owes it to his guests to exercise reasonable care for their safety, and he cannot delegate this duty to another, so as to relieve himself from liability for its nonperformance.

Appeal from trial term.

Action by Catherine M. Stott against Addison J. Churchill and others. From a judgment entered on a verdict in favor of plaintiff, defendants appeal. Affirmed.

Argued before BOOKSTAVER, P. J., and BISCHOFF and PRYOR, JJ.

Thomas S. Moore and Herbert C. Smyth, for appellants.
John A. Dutton, for respondent.

BOOKSTAVER, J. The plaintiff secured a judgment for $6,475.65, damages and costs, for injuries received by her, while a paying guest in the defendants' hotel, by reason of the fall of a passenger elevator in which she was riding, at the Hotel St. George, New York City, on April 6, 1893. The defendants were the lessees of the hotel, and had been for about a year prior to the accident. The elevator was made and was put in the building by Otis Bros. about 1879, 14 years before the accident. It was operated by hydraulic power. A perpendicular cylinder was filled with water, which moved a piston, to which were attached two rods, called "piston rods," which, as they descended, drew upward the cables, which ran over pulleys, and were attached to the elevator car. These rods were an inch and a sixteenth in diameter. The lower ends, for a distance of about seven feet, were always immersed in water, as the pistons did not rise quite to the top of the cylinder. These portions were wasted by corrosion, as was discovered after the accident, until a core of only about one-fourth of an inch in diameter of sound metal remained, at the points where the breaks occurred which caused the accident.

The main contention for reversal is that no negligence on the part of the appellants was shown, and that the case was therefore improperly allowed to go to the jury. It was proven that, before the defendants opened the hotel, they engaged men experienced in the business to examine the elevators, and make necessary repairs, imposing no limitations as to what they were to do in making the repairs. The men so employed proceeded to make such repairs as

they deemed sufficient, but did not remove the cylinder heads to examine the concealed portion of the rods, thinking that, if any corrosion was taking place within, some evidence of it would be seen upon the exposed portions, which were alternately within and without the water in the cylinder.  It was also testified by various witnesses, who had formerly been engaged as inspectors of elevators, that it was not their custom to remove cylinder heads where no signs of rusting were discernible in the exposed portions of the piston rods. On the other hand, cne McNamara, who had for 13 years had charge of the six hydraulic elevators in one of the large office buildings of New York City, testified that he each year examined the piston rods inside the cylinder in his elevators, and that from time to time rods had to be removed because they were corroded.  And one Berg, an inspector for Otis Bros., testified that where the elevator was old, and he was directed to make a thorough examination, he generally took off the cylinder head, or recommended that it be taken off.

Without going at greater length into the evidence, we deem it sufficient to say that a proper case was presented for the determination by the jury whether the defendants had exercised reasonable care in the inspection of the elevator.

The respondent claims that there was negligence, not only in the failure to properly inspect the elevator, but also in the failure to equip it with the most approved safety devices to check its fall in case of accident to any of the machinery.  Upon this point, without attempting to pass upon the merits of rival patents, it is only necessary to say that the device employed upon this elevator was only designed, so its inventor testified, to operate when the cables or chains gave way, not when the piston rods broke.  This, of course, made it all the more necessary that those rods should be thoroughly inspected.

There was no error in refusing to charge:

> "If the jury find that the elevator and its machinery were built by reputable manufacturers, and that the defendants had it regularly inspected by experts in that business, and promptly executed the repairs and changes suggested by them, they performed their duty, and are not liable for any injury caused by the breaking of the machinery."

However correct an exposition of the law this might have been had the plaintiff been a servant seeking to recover from the master for the negligence of a competent fellow servant, it was inapplicable to the case on trial.  Appellants owed it to respondent to exercise at least ordinary care and prudence in the care and management of the elevator and the inspection thereof.  A personal duty cannot be delegated to another, so as to relieve the person bound to perform the duty from liability for its nonperformance.  Shear. § R. Neg. p. 17, § 15.  Besides, in this case the defect—i. e. the corrosion—was palpable to any one of common observation and intelligence had the rods been examined at the place where it existed, and it was properly left to the jury, under the circumstances, to determine the question of prudence and care.

The court was also requested to charge that "the defendants were not bound to have the machinery of the elevator inspected by an

unusual or extraordinary mode of inspection," to which the court added, "unless the necessity for such inspection was obvious to a person of ordinary prudence, in view of the circumstances existing before the accident, while the defendants were in possession of the elevator." It is claimed that this qualification constituted error, because there was no evidence showing any obvious necessity for an unusual or extraordinary mode of inspection. In one sense of the words "unusual" and "extraordinary," there was such evidence, we think, in the fact that this elevator had been unused for nearly a year, and was built 14 years before the accident. The usual and ordinary mode of inspecting new elevators that had never been in disuse might well have been regarded by the jury as obviously inadequate.

The exception just considered, however, and several others, are due to the mistake the appellants' counsel seems to have made, as shown in his thirteenth request, in confusing the expressions "ordinary care" and "ordinary mode of inspection." To conduct a matter in the ordinary manner would not, under all circumstances, be the full measure of duty the law requires. Such a standard would in many cases be an altogether unsafe test. A defendant might exonerate himself of the charge of negligence by showing that he conducted his business in the same manner as others in the same line of business, however negligent, in fact, that manner might appear to be to a man of ordinary prudence. A little group of men in a limited class of business might, under such a theory of law, determine for themselves, absolutely and conclusively, what measures of precaution they owed to the general public. Interested persons cannot be thus allowed to usurp the functions of a jury. The fact that a similar accident had never before occurred, upon which the appellants so strongly rely, cannot avail in disproof of negligence in a case where the occurrence could be reasonably anticipated, and was anticipated and guarded against by some. In such cases the same kind of an accident may not have happened previously, to be sure, but such nonoccurrence may have been due to the superior precautions of others, and in spite of the neglect of such precautions by the one subsequently seeking to avail himself of the benefit of them.

The judgment should therefore be affirmed, with costs. All concur.