## SAND SPRINGS PARK v. SCHRADER et al.

No. 10057—Opinion Filed May 31, 1921.

Rehearing Denied July 19, 1921.

(Syllabus.)

1. **Negligence—Operation of Scenic Railway—Care Required.**

Operators of scenic railways or roller-coasters, such as are conducted in amusement parks, and take passengers thereon for hire, and being sources of peril by reason of their steep inclines, sharp curves, and great speed, owe to those who patronize them the duty to exercise the highest degree of care, skill, and diligence that it is reasonably possible to afford; keeping in mind the practical operation of the railway.

2. **Negligence—"Res Ipsa Loquitur."**

The phrase "res ipsa loquitur" is "merely a short way of saying that the circumstances attendant upon an accident are themselves of such character as to justify a jury in inferring negligence as to the cause of the accident." (Cohen v. Farmers' Loan & Trust Co., 127 N. Y. Supp. 564-5.)

3. **Same—Action for Personal Injuries on Scenic Railway—Instructions.**

When two cars on a scenic railway collide, by the one in the lead ceasing to go forward, but receding and colliding with the one following it, and in a suit for personal injuries by one injured by such collision, the court applies the doctrine of res ipsa loquitur to such facts and instructs the jury that the proof of the collision raises a presumption of negligence on the part of the owners and operators of said railway, and thereby makes out a prima facie case of negligence on the part of said owners and operators, but which presumption the said owners and operators may rebut by proofs sufficient to show they were not guilty of negligence, held, such instruction is a proper application of the law and was not erroneous. Held, further, that the owners and operators may rebut this presumption of negligence by either showing the actual cause of the accident, so the jury can determine whether or not such cause could be discovered by proper inspection; or they may show that the inspection made was so careful that no defect discoverable by inspection could be overlooked: (Cohen v. Farmers' Loan & Trust Co., 127 N. Y. Supp. 564-5.)

4. **Appeal and Error—Verdict — Right to Remittitur—Damages for Personal Injuries.**

When the proofs of damage are submitted to a jury under proper instructions, in a suit for personal injuries, and the verdict not being so excessive as to raise the presumption that the jury was actuated in rendering such verdict by passion or prejudice, and there being no specific proofs, otherwise, showing that the jury was so actuated, and the trial judge fails to act and enters judgment on the verdict, held, this court will not interfere with the verdict of the jury by ordering a remittitur.

5. **Appeal and Error—Review—Questions of Fact—Verdict.**

In a civil action, triable to the jury, where there is competent evidence reasonably tending to support the verdict of the jury, and no prejudicial errors of law are shown in the instructions of the court, or its ruling on law questions presented during the trial, the verdict and finding of the jury will not be disturbed on appeal.

Error from District Court, Tulsa County; N. E. McNeill, Judge.

Action by Nellie R. Schrader against the Sand Springs Park, a corporation, and others, for personal injuries. Judgment for plaintiff against the defendant named, and it brings error. Affirmed.

Stuart, Cruce & Riddle, Poe & Lundy, H. O. Bland, J. F. Sharp, and Paul P. Pinkerton, for plaintiff in error.

Bush, Moss & Owen and H. B. Martin, for defendants in error.

ELTING, J. This action was filed in the district court in and for Tulsa county, state of Oklahoma, June 25, 1917, by the plaintiff, Nellie R. Schrader, against Chas. Page, Sand Springs Park, a corporation, and E. M. Monsell, defendants; was tried by a jury and a verdict returned in favor of the plaintiff in the sum of $12,958 on January 11, 1918; the appeal filed in this court July 26, 1918.

This is an action by the plaintiff against the defendants in which the plaintiff prayed for a judgment in the sum of $20,200 for personal injury alleged to have been received by her while a passenger on a scenic railway or roller-coaster operated by one or all of the defendants; said scenic railway being located in the park under the control and management of one or all of the defendants, near Tulsa, Oklahoma. Defendant in error Schrader alleged, in substance, that at the time of the injury the defendants were operating and conducting a public amusement park, commonly known as Sand Springs Park. They were operating many devices for the amusement and entertainment of those who attended the park, which were widely advertised and among those were the roller-coaster or scenic railway, which was operated for hire, charging an admission fee. On this scenic railway were operated something like nine cars; each car would carry four passengers. The cars ran upon a track, the track being crooked, with sudden curves, dips, and inclines, some more steep than others, and

the cars were propelled to the highest point, about 40 feet from the ground, by power and were released, after the passengers were boarded, from such highest point and started and were propelled by the force of gravitation, carrying the passengers over the curves and inclines, affording thrills, etc. The said scenic railway, at the time of said injury, was in the control and charge of the servants, agents, and employes of the defendants, the plaintiff alleged, and by reason of the carelessness, neglect, and failure to use that degree of care commensurate with the hazards and dangers of the said scenic railway which the law required in the operation of the same, the plaintiff was injured in her left foot and left lower limb.

That the car that had preceded the car upon which the plaintiff below, defendant in error herein, was riding, instead of making its trip over the railway, hitting one of the elevations, began to recede, and running backwards collided with the car in which the defendant in error was riding; said cars being propelled by their own momentum and not being under the control or direction of the defendants or their agents or servants after being released, not being capable of being so controlled nor capable of being controlled by the defendant in error, the collision took place and the injury resulted to the defendant in error.

The defendants answered separately, and also filed a joint answer, denying particularly the allegations of negligence and setting up the fact that they had exercised all the care that the law required of them; that the said railway had been constructed by men skilled in such work and that the same had been constructed according to approved standards of construction; had been kept in good repair and had been operated by experienced operators and under careful and continuous inspection.

Proofs were introduced to the jury by the plaintiff below, defendant in error herein, proving the collision between the cars, proving the injury to the defendant in error, and the nature and extent of same.

The defendants made proofs showing that one of the defendants, Chas. Page, was not the owner of said scenic railway, but that the same had been leased to one of the defendants, E. M. Monsell; there being some conflict of evidence as to whether the corporation or Monsell was the real owner and proprietor in control of said scenic railway.

The trial court held that the proofs showed no legal liability as to Chas. Page, and dismissed the suit as to him; and submitted to the jury the question of liability as to the other two defendants, the said Sand Springs corporation and E. M. Monsell, and with directions that they could hold either one or both, if the evidence so warranted.

The defendants introduced further evidence, for the purpose of showing the precautions, care, and diligence in the construction, operation, repair, and inspection in the operation of said scenic railway, for the purpose of showing their compliance with all the legal requirements and in satisfaction of their duties toward the patrons of said railway.

There were also allegations and contentions that the defendant in error leaped from the car and thereby contributed to her injury. There was also the contention that the injury, in the beginning, was slight and that the defendant in error failed to give the injury proper treatment, and if said injury had become permanent, that it was because of the actions of the defendant in error; also contentions that the defendant in error had received compensation and satisfaction for the injury received; but all of said contentions were overruled by the court, and the question of negligence and measure of damage was submitted by the court to the jury, and a verdict was returned in the sum stated, $12,958, against the Sand Springs corporation; Chas. Page being released by the order of the court and E. M. Monsell being released by the verdict of the jury.

The defendants below, plaintiffs in error herein, at the close of the evidence of the plaintiff below, demurred to the evidence, and the trial court overruled the same. The same parties, at the close of the evidence, moved for an instructed verdict, and the court overruled the same. After the verdict of the jury, the same parties also moved for judgment non obstante veredicto, and that motion was also overruled by the trial court. In all of said rulings, we do not think the court committed any error.

At the close of the trial the defendants below requested the court to give 15 instructions, which were refused by the court and such refusal was excepted to by defendants below, and the court gave to the jury 21 instructions, including a statement of the cause in his instruction No. 1, and to the giving of 18 of said instructions the defendants below excepted.

The plaintiff in error, in its brief, made several assignments of error, objecting to several of the instructions given by the court to the jury; its objections being particularly directed to instructions Nos. 11, 12, and 16 given by the court, it contending that the court committed reversible error in giving those three instructions; the contention

being further that the court committed reversible error in failing to give the requested instructions asked for by the plaintiff in error, and particularly his refusal to give requested instruction No. 11.

We will consider first the giving of instruction No. 12 by the court, which instruction No. 12 was as follows:

"No. 12. You are further instructed that the collision of two cars upon the railroad track of a scenic railway operated by the operators, creates a presumption of negligence on the part of the owner and operators and makes out a prima facie case of negligence on behalf of the owners and operators of said scenic railway."

In this instruction the court sets forth and applies to the facts of the case the doctrine of res ipsa loquitur. The explanation of the doctrine of res ipsa loquitur is fully set out on pages 6136-6139 of Words and Phrases (First Series) vol. 7.

We quote the following from page 6139:

"The most apt and concise statement of the principle of res ipsa loquitur is found in the leading case of Scott v. London & St. Katherine Docks Co., 3 Hurl. & C. 596, where the plaintiff sued for personal injuries and the court held there must be reasonable evidence of negligence, but, where the thing is shown to be under the management of the defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the accident arose from want of care. Chenall v. Palmer Brick Co., 43 S. E. 443, 445, 117 Ga. 106 (Citing Waterhouse v. Schlitz Brewing Co., 81 N. W. 725, 12 S. D. 397, 48 L. R. A. 157)."

We think that the court was correct in said instruction, and that the doctrine applied to the facts in this case. The collision between these cars was such a happening that in the ordinary course of things would not have resulted if those who were in charge of the cars had used proper care, and the proof of the collision raised a presumption of negligence, and if permitted to go unexplained, is sufficient to sustain the verdict.

The defendants below offered proofs in rebuttal of said presumption of carelessness, and the court submitted to the jury that issue in instruction No. 16, which was as follows:

"No. 16. You are instructed that where the plaintiff by proof of the happening of an accident presumptively due to the negligence of the carrier in a case of this kind, has made out a case against the carrier, the carrier may show, as a sufficient defense, that in all matters which, under the evidence, might have been connected with the accident, they have exercised that high degree of care,

skill, and foresight which was required of them to exercise by the nature of the business; and if you find from the evidence that the owners and operators of said scenic railway in this case prior to the time of the accident in the operation of said railway through their agents exercised that high degree of care, skill, and foresight that a reasonably prudent person would exercise under like circumstances and in a like situation, then your verdict should be for the defendant and against the plaintiff."

To this instruction the defendants below excepted, and requested instruction No. 11, which was refused by the court, and which was as follows:

"No. 11. You are instructed, Gentlemen of the Jury, that if you find from the evidence that the defendants used that degree of care commensurate with the danger incident to or attending the operation and running of the scenic railway system in the inspection of the track, the cars used thereon and other machinery and appliances, and in properly equipping and oiling the same, then the court tells you that said defendants would have discharged their duty owing to the plaintiff, and it will be your duty in such case to find for the defendants, notwithstanding said injury; and this although you may be unable to account for the cause of said collision and injury."

We think that instruction No. 16 properly submitted that issue to the jury. We do not think that instruction No. 11, requested by the defendants below, was a proper instruction as applied to the facts in this case, and that the court committed no error in refusing the same in that it fails to define the degree of care required.

In the case of Scott v. Churchill, 36 N. Y. Supp. 477, the court held that the refusal to give the following instruction by the trial court was not error:

"If the jury find that the elevator and its machinery were built by reputable manufacturers, and that the defendants had it regularly inspected by experts in that business, and promptly executed the repairs and changes suggested by them, they performed their duty, and are not liable for any injury caused by the breaking of the machinery."

And in the opinion, the court gave the following reasons for its holding:

"However correct an exposition of the law this might have been had the plaintiff been a servant seeking to recover from the master for the negligence of a competent fellow servant, it was inapplicable to the case on trial. Appellants owed it to respondent to exercise at least ordinary care and prudence in the care and management of the elevator and the inspection thereof. A personal duty cannot be delegated to another, so as to relieve the person bound to perform

the duty from liability, for its nonperformance. Shear. Sec. R. Neg. p. 17, paragraph 15. Besides, in this case the defect—i. e., the corrosion—was palpable to any one of common observation and intelligence had the rods been examined at the place where it existed, and it was properly left to the jury, under the circumstances, to determine the question of prudence and care."

It was brought out in the cross-examination of one or two of the witnesses of the defendants below that one of the wheels was off of the car that was ahead of the car upon which the plaintiff was riding, and which first named car turned back and collided with the car in which the plaintiff was . was also shown that the cotter pin which held the wheel on the axle was gone. These facts are undisputed.

We have examined the evidence of the defendants below bearing upon the question of the inspection of these cars, and we think that it was not an unreasonable inference for the jury to conclude that the evidence of the defendants below was not sufficient to overcome the presumption that there must have been a careless inspection of said cars. The whole crux of the question of negligence centers around the absence of the cotter pin. The most natural thing that an inspector would think of, as this court views it, would be to look well to the cotter pins. The evidence showed that these inspections took place often on this busy 5th of July, and the presumption arises very strongly that the cotter pin in the axle of this car must have been in bad condition at the time of the last inspection before the accident. No witness testified to the fact that there had been any special examination of the cotter pin of this particular wheel of this particular car or of the cotter pins of any other car.

If the doctrine of res ipsa loquitur is held to be applicable to any state of facts in any particular case, and it is so being held applicable in this particular case, then the burden rested upon the plaintiff in error to show one of two conditions: First, what the cause of the accident really was, and that said cause was of such a nature that the jury would reasonably conclude that the collision was unavoidable, after the exercise of that care that the law required of the defendants. Or, second, their proofs must be such as to rebut the inference that the accident arose from a defect that should have been discovered by proper inspection.

We quote the following from the opinion by Lehman, J., in the case of Cohen v. Farmers' Loan & Trust Co., 127 N. Y. Supp. 564:

"The phrase 'res ipsa loquitur' is 'merely a short way of saying that the circumstances attendant upon an accident are themselves of such a character as to justify a jury in inferring negligence as to the cause of the accident.' Same case, at page 196 of 166 N. Y., at page 927 of 59 N. E. (52 L. R. A. 922, 82 Am. St. Rep. 630).

"The question presented to us is, as stated by Mr. Justice Delany, whether the explanation provided by the defendant is sufficient to overcome the inference of negligence created by the circumstances attendant upon the accident; that is, has the defendant shown that it has used due care in providing, maintaining, and operating the elevator? The defendant gave little evidence as to the appliance provided or as to its operation. Conceding, however, that the evidence was sufficient to show that the elevator was a proper appliance and was operated without negligence, it still must rebut the inference that it arose from a defect that should have been discovered by proper inspection. In other words, if the doctrine of res ipsa loquitur has been properly applied, it was fairly inferable that the accident must have occurred from one of three causes, and it is quite immaterial which of these causes actually produced the accident, and, though we concede that the defendant's testimony shows that two of the possible causes of the accident did not exist in the case, it has not rebutted the inference of negligence, but has merely made the inference of negligence more narrow. To rebut this remaining inference the defendant must show that the defect could not be discovered by reasonable inspection. It has shown only that competent men have inspected the elevator and found it safe, but has in no way shown that these competent men were not negligent in their inspection."

"The appellant owed it to the respondent 'to exercise at least ordinary care and prudence in the care and management of the elevator and the inspection thereof. A personal duty cannot be delegated to another, so as to relieve the person bound to perform the duty from liability for its nonperformance.' Scott v. Churchill, 15 Misc. Rep. 80, 36 N. Y. Supp. 476, affirmed 157 N. Y. 692, 51 N. E. 1094. And for this reason it was held in that case that there was no error in refusing to charge: "If the jury find that the elevator and its machinery were built by reputable manufacturers, and that the defendants had it regularly inspected by experts in that business, and promptly executed the repairs and changes suggested by them, they performed their duty, and are not liable for an injury, caused by the breaking of machinery." However correct an exposition of the law this might have been, had the plaintiff been a servant seeking to recover from the master for negligence of a competent fellow servant, it was inapplicable to the case on trial.' Scott v. Churchill, supra.

"Since an owner of a building cannot delegate his duty of inspection of an elevator to an expert in that business, the proof that an expert has examined it in no wise rebuts the

presumption of negligence raised by the circumstances attendant on the accident. To rebut this presumption he must show either the actual cause of the accident, so that the trial justice or jury can determine whether or not such cause could be discovered by proper inspection, or he must show that the inspection made by the expert was so careful that no defect discoverable by inspection could be overlooked.

"The appellant relies upon the case of Young v. Mason Stable Co., 193 N. Y. 188, 86 N. E. 15, 21 L. R. A. (N. S.) 592, 127 Am. St. Rep. 939, where evidence of an examination by an expert was held sufficient to rebut a possible presumption, caused by the fall of a freight elevator operated by a servant who was injured by the fall, that the master had failed in the duty imposed by law to provide for an adequate inspection thereof. That case, however, proceeded upon the theory that the master, in relation to a servant, was bound only to 'provide' adequate inspection, and that this duty was met by putting the inspection in the hands of an expert; but it distinguishes the case from one where the relationship of the parties imposed a personal duty upon the owner to use due care in the inspection of the elevator. It cites as authority for the distinction the case of Stott v. Churchill, supra, and we must therefore regard that case as a correct exposition of the law.

"I believe, for these reasons, that the judgments should be reversed only on the ground that a question was excluded which, if answered, might have shown the actual cause of the accident."

For a very learned discussion of the doctrine and application of the doctrine, of res ipsa loquitur, see Griffen v. Manice, by Cullen, Justice, 166 N. Y. 188. This case is cited approvingly by Lehman, Justice, in the above quoted portion of his opinion. From said case we take the following short quotations, as we regard them important:

"To put it tersely, the court thought that in the absence of tempest or external violence a building does not ordinarily fall without negligence; while it also thought that the disruption of a fly wheel proceeds so often from causes which science has been unable to discover, or against whihc art cannot guard, that negligence cannot be inferred from the occurrence alone.

" * * * When the facts and circumstances from which the jury is asked to infer negligence are those immediately attendant on the occurrence. we speak of it as a case of 'res-ispa loquitur'; when not immediately connected with the occurrence, then it is an ordinary case of circumstantial evidence. In Benedick v. Potts. 88 Md. 52, 40 Atl. 1067, it is said: 'In no instance can the bare fact that an injury has happened, of itself, and divorced from all the surrounding circumstances, justify the inference that the injury was caused by negligence. It is true that direct proof of negligence is not necessary. Like any other fact, negligence may be established by the proof of circumstances from which its existence may be inferred. * * * This phrase (res ipsa loquitur), which, litliterally translated, means that "the thing speaks for itself," is merely a short way of saying that the circumstances attendant upon an accident are themselves of such a character as to justify a jury in inferring negligence as the cause of that accident.' "

There is a distinction running through the law books between the duty as to inspection that an employer owes an employe and the nature of an inspection where a special duty is owed by the defendant to the plaintiff, as in the instant case. The distinction is referred to by Justice Lehman in the quoted portion of his opinion. See the case of Young v. Mason Stable Company (N. Y.) 127 Am. St. Rep. 939, and notes thereto.

See, also, Illinois Central Ry. Co. v. Phillips, 49 Ill. 234; Toledo, Wabash & Western Ry. Co. v. Beggs. 85 Ill. 80; Best Park & Amusement Co. v. Rollins (Ala.) 68 So. 417; Fla. Cent. P. R. Co. v. Rudulph (Ga.) 38 S. E. 328; Ga. R. & Banking Co. v. Wall, 7 S. E. 639; Johnson et ux. v. Seattle Electric Co. (Wash.) 77 Pac. 677.

To repeat, after we had read over the evidence offered by the defendants below in rebuttal of the presumption of negligence, there still lingered in the mind of the writer of this opinion the feeling that there must have been something lacking in the inspection of those cars and that there had been a failure to make such an inspection as would have discovered the defect in the cotter pin. It is true there were nine cars, and if there were four wheels to the car the inspection of nine cars would require the inspection of 36 cotter pins, but we think that the degree of care required of one operating a contrivance such as was this scenic railway required at least a reasonable inspection of each one of the 36 cotter pins, and in all of the evidence introduced by the defendants below no one testified to the fact that an inspection of the cotter pins was made at all. As we view the case, no part of the car was more important than were the cotter pins.

The defendants below, and plaintiff in error herein, objected to instruction No. 11, given by the trial court, and assigned the giving of the same as reversible error herein. Said instruction was as follows:

"No. 11. The operator of a scenic railway is bound to use the highest degree of care and caution for the safety of his patrons, and do all that human care and foresight can reasonably do, consistent with the mode

of conveyance and the practical operation of the railway, to prevent accidents to patrons for hire while riding in its cars."

This court thinks that said instruction properly defines the degree of care and diligence required of those operating an instrumentality such as is involved in the instant case. We are not seeking to draw an analogy between the rule that applies to the common carrier of passengers for hire and those who carry passengers on scenic railways for hire. We doubt the practicability and necessity of drawing such an analogy, but we do think that the rule laid down in instruction No. 11 is not too rigid, nor is it unreasonable that it be applied to such an instrumentality as was this scenic railway and as it is shown to be by this record. We are unable to see the force of the contention that one who rides a scenic railway should be held to assume any other or further risks than would a passenger riding a passenger train. The fact that the passenger on a scenic railway may be seeking pleasure and recklessly accepts the risks, it may be stated, would not make this status different from that of a passenger riding a passenger train on a pleasure trip. And to say the least of it, when you commence drawing the distinction between the two classes of passengers you bring up contentions that are irreconcilable and, in fact, lead to no practical solution, and we are finally brought to the conclusion that the risks and hazards in riding a scenic railway are such that raise a duty upon the part of those who operate it, toward those who patronize it, that requires, as we deem it, the highest degree of care and caution in the operation of the same, and requires the exercise of the highest skill and foresight commensurate with its practical operation.

The authorities that we have heretofore cited seem to hold the degrees of diligence above defined to be the very least that would be required of those who operate any such instrumentality. In the case of Johnson et ux. v. Seattle Electric Co., supra, the syllabus states the following:

"A carrier is not bound to do everything that can be done to insure the safety of its passengers, but need exercise only the highest degree of care consistent with the practical conduct of its business."

To the same effect are the other authorities heretofore cited.

We are not holding those who operate scenic railways to be insurers of the life and safety of those who patronize them, but, to acquit themselves of liability, the operators of such machines must not fall short of the degree of care and diligence as defined in instruction No. 11.

We are not going to condemn the scenic railway, involved in the instant case, as on a parallel with such a dangerous and explosive instrumentality as was dealt with by Mr. Chief Justice Owen in the case of the Oklahoma Gas & Electric Co. v. Oklahoma Railway Co., 77 Okla. 290, 188 Pac. 331. Neither are we going to designate it as a death trap, but we are not so certain that such a contrivance may not become such in a very short time, if those who operate them fail to practice the degree of care and diligence that the trial court defined in his instruction No. 11.

We have examined the instructions given by the trial court in this cause, and we find that they properly define and present the issues involved in the instant case, and we find no other errors by the trial court that would warrant a reversal.

The plaintiff in error contends that the verdict of the jury is excessive, and that there should be a remittitur ordered by this court. The rule in Oklahoma seems to be that where the verdict is not so excessive as to raise a presumption that the jury was actuated by prejudice and passion in rendering the same, and in the absence of any specific proofs of passion and prejudice in rendering the judgment, and where the facts have been submitted to the jury under proper instructions, it is left to the discretion of the jury as to the amount of the recovery, and this is especially true where the appellate court is called upon to make the remittitur and where the trial court has failed to take action. The following Oklahoma cases support the above rule as to ordering remittiturs by this court; Henryetta Coal & Mining Co. v. O'Hara, 50 Okla. 159, 150 Pac. 1114; Waters-Pierce Oil Co. v. DeSelms, 18 Okla. 107, 89 Pac. 212.

In this case the plaintiff below was 35 years of age, in good health, and was drawing a salary of $50 a month and other benefits, and at the time of trial, while the proofs were conflicting, it appears she had a permanent injury to her foot. She had taught two terms of school since the injury, in country districts, but, owing to the trouble that her wound was giving her, she had to abandon this pursuit. There is no evidence in this case that the jury was actuated by passion or prejudice in the rendering of the judgment. The trial judge heard the evidence and had an opportunity to observe the condition of the plaintiff, and if the trial judge had concluded that the judgment was excessive, we have reason to believe, he would have ordered a remittitur or granted a new trial. This court will, therefore, refuse to order a remittitur in this case.

The judgment of the trial court is, therefore, affirmed.

HARRISON, C. J., and JOHNSON, MILLER, and KENNAMER, JJ., concur.