## SAND SPRINGS RAILWAY CO. v. McGREW.

No. 11963—Opinion Filed Sept. 18, 1923.

Rehearing Denied Oct. 9, 1923.

**1. Damages—Excessiveness of Verdict.**

It is well settled that in determining whether a verdict is excessive, each case must be ruled chiefly on its own facts and circumstances.

**2. Same—Appeal—Personal Injuries.**

When the proofs of damages are submitted to a jury under proper instructions in a suit for personal injuries, and the verdict not being so excessive as to raise the presumption that the jury was actuated in rendering such verdict by passion or prejudice, and there being no specific proofs otherwise showing that the jury was so actuated, and the trial judge fails to act and enters judgment on the verdict, held, this court will not interfere with the verdict of the jury by ordering a remittitur.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from Superior Court, Tulsa County; L. J. Martin, Judge.

Action by J. C. McGrew against Sand Springs Railway Company to recover damages for personal injuries. Judgment for plaintiff, and defendant brings error. Affirmed.

Stuart, Cruce & Bland, Paul P. Pinkerton, and E. J. Doerner, for plaintiff in error.

Robinett & Ford, for defendant in error.

Opinion by PINKHAM, C. This was an action for personal injuries brought by the defendant in error, J. C. McGrew, as plaintiff, against Sand Springs Railway Company, plaintiff in error, as defendant, in the superior court of Tulsa county. The plaintiff claims to have received injuries while he was a passenger on one of the defendant's interurban cars running between the cities of Tulsa and Sand Springs. It is alleged in plaintiff's petition that the car on which he was riding collided with another car being operated by the defendant, and that he was injured by being thrown from the seat in which he was riding against the front and south wall of the car with great force and violence, and as a direct and proximate result sustained painful and permanent injuries.

Thereafter defendant filed its answer containing a general denial. A plea of contributory negligence was set up, and for further defense defendant alleged that if plaintiff is suffering from any injuries, diseases, or bodily ailments, that said afflictions are the result of injuries and ailments received by the plaintiff prior to the 4th day of November, 1919, and for which defendant is in no manner responsible.

The cause thereafter proceeded to trial before the court and a jury upon the issues joined by the pleadings. Thereafter a verdict in favor of the plaintiff and against defendant for the sum of $2,000 was returned, and judgment was duly entered thereon. From this judgment the defendant appeals to this court by petition in error and case-made attached.

The only error complained of and discussed in defendant's brief is that the verdict of the jury was so excessive as to show passion and prejudice against the defendant.

It is well settled that in determining whether a verdict is excessive each case must be ruled chiefly on its own facts and circumstances. 8 R. C. L. 675, and cases cited.

It appears from an examination of the record that a year and a half prior to the accident in question, the plaintiff, who at that time was an electrician, 35 years of age, was injured in a gasoline explosion, the injuries consisting of burns of both legs, of both arms, and of the right hand. The report of one of the physicians who examined the plaintiff in connection with his previous injury, which report was introduced in evidence without objection, concludes in part as follows:

"To sum up, this man is almost bereft of the use of both hands. He has no function in the left hand, and the little function that he has in the right hand is greatly modified by the inability to extend and rotate the forearm. He is permanently incapacitated for the performance of any kind of work, manual or otherwise, which requires the most elementary use of his hands."

As a result of his prior injuries for which, the record discloses, he received $2,900 through the Industrial Commission, the plaintiff was incapacitated from performing any labor which required the use of his hands and arms, and that as a result of such prior injuries, he was at the time of the accident in question, and for some considerable time prior thereto, employed as a night watchman, because his disabled condition prevented him from following his previous occupation, or any occupation requiring the use of his hands and arms.

There is evidence of a very positive character that prior to and at the date of the accident in question, the plaintiff carried his right forearm at a right angle to the elbow, and that his right arm was shrunken, the fingers of his right hand deformed, and one of his thumbs bent back, all of which was the result of an injury received many months prior to the accident in question.

It was in this connection that the plaintiff testified concerning his injuries in the instant case.

The extent of the plaintiff's injury in the case at bar, as disclosed in this record, consisted of a dislocation of his right shoulder, and an injury to this right elbow. The testimony of the plaintiff and of his physicians that the plaintiff suffered great pain as a consequence of the injury complained of, is not disputed.

After the accident the plaintiff waited with the other passengers for a car and rode into Tulsa. The only witnesses who were present at the scene of the accident, who testified in the case, stated that the plaintiff made no claim of having been injured, that he got off the car at Tulsa without help, and in the usual manner: the plaintiff himself testified that he felt no pain until an hour after the accident. These facts and circumstances were all before the jury.

The only question is whether the amount of damages awarded the plaintiff in this case is obviously so disproportionate as to the injury proved as to justify the conclusion that the verdict is not the result of the cool and dispassionate consideration of the jury.

It is the contention of the defendant that the plaintiff's physical condition at the time of the trial was the result of his previous injury, and that the injury which he received, if any, while a passenger on the defendant's car was, at the utmost, slight, and that the jury witnessing the condition of the plaintiff's hands and arms, and the scars upon his person, which were the result of the burns he had previously received, rendered a verdict so excessive as to show passion and prejudice against the defendant.

The extent and nature of the plaintiff's injuries were testified to by the plaintiff and a number of physicians on his behalf. One other physician who had been chosen by the defendant also examined the plaintiff shortly before the trial but did not testify in the case.

One of the physicians on behalf of the plaintiff testified, in effect, that he made an examination of the plaintiff on the day of the accident in question, and found a dislocation of his right shoulder, and an injury to the elbow; that he also discovered some old burns upon his arms that apparently were of long standing and were all healed over; that he had the plaintiff carry his arm in a sling about five or six weeks, after adjusting it; that the plaintiff suffered pain and that he treated him for his injuries for about five or six weeks; that he examined the plaintiff in company with two other physicians, one of them a physician chosen by the defendant just before the trial, and stated that he found an un-united fracture of the main bone of the forearm, and that the probabilities are that it will never be straightened out. The record discloses that just prior to the trial X-ray pictures were made of the plaintiff's elbow. The physician who made the X-ray pictures stated that the picture showed that a piece of bone at the elbow was completely broken off. That the plaintiff's right arm "is in the position of what we call semi-flexion; in other words he cannot extend it straight out."

This physician was asked to state whether or not the condition in which he found the elbow joint to be was due to the burns that the plaintiff received upon his forearm, and stated that the burns previously received "had nothing to do with it at all."

On cross-examination the witness stated that in case of a severe burn contraction of the ligaments would be caused, and further stated that the X-ray would not show the fibrous union of the bones, and that if the bones were united by a fibrous tissue, the X-ray would not show it. This expert witness also testified that when a man was suddenly injured and received a fracture of the shoulder and a fracture of the elbow, these injuries would be immediately attended with great pain and suffering, and would have immediately destroyed the person's use of the arm and shoulder.

Another physician on the part of the plaintiff stated, in substance, that he had examined the plaintiff three or four times about a month before the trial: that he examined the plaintiff in the presence of two other physicians: he stated that there was evidence of a previous injury to the right shoulder, that the nerves were affected; that his examination showed evidence of a previous sublenoid dislocation; that is, that the humerus was carried out of the socket of the shoulder joint and downward into the glenoid cavity; that several things might cause such an injury, such as throwing the arm upward or backward, or a blow such as one might have received by a forcible fall out of a seat and being jammed into the sides of a car, would cause such an injury; that he found the nerves were painful and very sore; that the elbow was in a very bad condition, and could neither be flexed nor extended completely; there was considerable pain and tenderness at the elbow.

This witness stated that in his opinion the injuries which he found in the plaintiff's right shoulder and right elbow were permanent.

There was a sharp conflict in the testimony as to the extent of the plaintiff's injuries at the time of the accident. Witnesses on behalf of the defendant, who were in the car with the plaintiff at the time of the accident, testified that the plaintiff stuck his hand or fist through the window glass for the purpose of obtaining air into the car for the benefit of the passengers, and in so doing cut his hand. Other testimony was to the effect that the plaintiff raised a window after the accident. There is testimony also in the record on the part of the defendant to the effect that the plaintiff just after the accident asked for a cigarette, and that some one gave him the tobacco and paper, which the plaintiff proceeded to roll and smoke. The plaintiff denied that he either stuck his hand through the window, or that he rolled a cigarette, but admitted that some person gave him one which he smoked.

It was the function of the jury to weigh the testimony to observe the witnesses and their demeanor upon the stand. The jury saw and heard the plaintiff. The presiding judge, whose duty it was, imposed by law, to set aside the verdict in this case or reduce its amount, if in his judgment the jury erred from prejudice or other cause, has approved this verdict and added his sanction to the award. The question was one peculiarly proper for the jury to determine.

It is not contended by the defendant the collision which occurred on the 4th day of November, 1919, was not due to the negligence of the defendant, neither is it seriously contended that the plaintiff did not suffer some injuries on the occasion of the accident. It is, however, the contention of the defendant that the injuries suffered by the plaintiff were not of a serious character and that the verdict of the jury fixing his damages at $2,000 was based upon his physical condition at the time of the trial, which physical condition, it is contended, was the result of

a prior injury received long before the accident in question, and that the jury was moved by sympathy in fixing the amount of his damages, which were so excessive as to show passion and prejudice against the defendant.

The question whether injuries inflicted by negligence are substantial or nominal is for the jury, upon conflicting evidence.

"In personal injury actions, it is ordinarily a question of fact for the jury as to whether the plaintiff was injured, and the jury should decide also as to the nature and extent of the injury." (8 R. C. L. 656).

The record discloses that in his opening statement to the jury, counsel for plaintiff stated that the plaintiff had injuries which he did not sustain in this collision; that he had been severely burned, and that the plaintiff asked nothing for recovery on account of any injuries he received elsewhere at some other time.

The 4th instruction of the court is as follows:

"You are further instructed, gentlemen of the jury, that the evidence in this case shows that sometime prior to the accident, to wit, on or about the first day of May, 1918, the plaintiff was injured in an accident, and if you believe from the evidence in the case that the condition of the plaintiff now, as to his shoulder, and as to his elbow, is the result of that accident, and not the result of the accident occurring in November, 1919, at the time of the collision on the defendant's road, then your verdict must be for the defendant."

We cannot assume that the jury disregarded this instruction as well as the statement of the plaintiff's attorney, with reference to allowing damages for his former injury.

A verdict for $2,000 was held not excessive in City of Shawnee v. Slankard, 29 Okla. 133, 116 Pac. 803. There the plaintiff, a laboring man, sustained a dislocated shoulder, an injured ankle, and a sprained knee, from which he suffered great pain and agony, and it was believed that the injury to the shoulder was permanent.

"In a civil action triable to the jury, where there is competent evidence reasonably tending to support the verdict of the jury, and no prejudicial errors of law are shown in the instructions of the court or its rulings on law questions presented during the trial, the verdict and finding of the jury will not be disturbed on appeal." (Sand Springs Park v. Scrader et al., 82 Okla. 244, 198 Pac. 983).

It is true that the testimony on the part of the plaintiff was strongly controverted, as to the extent and nature of his injuries, but the jury found the facts in favor of the plaintiff.

No complaint is made of any ruling of the trial court, or of the giving of the instructions. The plaintiff without question was crippled in his arms and hands when he boarded the defendant's car, but we think it can, from the disclosures of this record, be said that he suffered an injury in the accident that occurred, the extent and nature of which was necessarily determined by the jury, under proper instructions of the court, and we cannot say, taking into view all the peculiar facts and circumstances of this case, that the amount of damages found by the jury is so excessive as to show passion and prejudice against the defendant.

In the case of Choctaw, O. & G. R. Co. v. Burgess et al., 21 Okla. 653, 97 Pac. 270, the rule is announced that appellate courts should sparingly exercise the power of granting new trials on the ground of excessive damages, doing so only when it appears that the verdict is so excessive as to indicate per se passion or prejudice.

In the above case, it is further said in the opinion:

"A new trial will not be granted by the appellate court because it is not entirely satisfied with the amount of the verdict. L. R. Junction Railway Co. v. Woodruff, 49 Ark. 381, 5 S. W. 792, 4 Am. St. Rep. 81. In the case of Bodwell v. Osgood, 3 Pick. (Mass.) 379, Judge Wild stated: 'We do not doubt our power to grant new trials on the ground of excessive damages in cases of personal torts, and where they are clearly excessive, and greatly disproportionate to the injury proved, we are bound to interpose, but a strong case must be made out.'"

"In a trial scrupulously free from prejudicial incidents, we are not going to say the verdict, large as it is, might not stand." Neff v. City of Cannon, 213 Mo. 367.

In the case of Sand Springs Park v. Shrader et al., 82 Okla. 244, 198 Pac. 983, the fourth paragraph of the syllabus reads as follows:

"When the proofs of damages are submitted to a jury under proper instructions in a suit for personal injuries, and the verdict not being so excessive as to raise the presumption that the jury was actuated in rendering such verdict by passion or prejudice, and there being no specific proofs otherwise that the jury was so actuated, and the trial judge fails to act, and enters judgment on

the verdict, held, this court will not interfere with the verdict of the jury by ordering a remittitur."

For the reasons stated, we are constrained to believe that the verdict of the jury in this case is not so excessive as to show passion and prejudice against the defendant, and that, therefore, the judgment should be affirmed.

On appeal to this court from a judgment of the district court of Tulsa county, supersedeas bond was filed, executed by the defendant, Sand Springs Railway Company, as principal, and Charles Page and C. F. Tingler, as sureties, to stay execution of said judgment: and the plaintiff has asked this court in his brief to render a judgment against the bondsmen of the defendant as well as against the defendant. No response has been made to this request. The judgment of the trial court was rendered on the 17th day of June, 1920, in the sum of $2,000, together with interest thereon at the rate of six per cent, per annum from the 17th day of June, 1920, and for costs, and judgment therefore will be entered in this court against the defendant and the sureties on said appeal bond in the sum of $2,000, with interest thereon at the rate of six per cent. per annum from the 17th day of June, 1920, and for costs, for which execution may issue.

By the Court: It is so ordered.