## HENSHAW et al., Rec's., v. BRUNSON.

No. 18975. Opinion Fi ed April 9, 1929.

Rehearing Denied June 25, 1929.

Shartel & Gilliland, for plaintiffs in error.

Gomer Smith, for defendant in error.

DIFFENDAFFER, C. This is an action instituted in the district court of Canadian county by G. G. Brunson, defendant in error, hereinafter referred to as plaintiff, against George A. Henshaw and G. T. Lackey, receivers for the Oklahoma Railway Company, a corporation, plaintiffs in error, hereinafter referred to as defendants, to recover damages for personal injuries arising from a collision between a street car operated by defendants and an automobile driven by one Robert Knie, in which plaintiff was riding as a passenger. The injuries alleged to have been sustained by plaintiff were:

"That he sustained a severe blow upon the head, a concussion of the brain and was rendered unconscious thereby; that his back was severely wrenched, twisted and injured; the bones of his spinal column broken and displaced, and the muscles, tendons and ligaments and the nerves thereof injured. That the bones of his pelvis were crushed and broken in such a manner as to affect the connection of the hips and the legs with the pelvis, and thereby rendered the plaintiff lame and cripp.ed; that he sustained a severe internal injury to his kidneys, bladder and urine, the exact nature and extent of which he is unable to describe at this time. Plaintiff alleges that he sustained a severe and profound mental and nervous shock as a result of said injuries; that he has suffered great pain and anguish, both of mind and body; that his injuries are permanent, and that he will continue to suffer thereby; that by reason of said injuries, the various glands of his body have been injured and swollen and failed to function."

. Plaintiff alleged that he was engaged in the real estate business, and had an earning capacity of $4,000 per annum, and that as a result of the injuries he has been deprived of his earnings and is permanently disabled from engaging in his work and vocation; that he has obligated himself to expend the sum of $100 for medical advice and attention, and will be required in the future to expend large sums of money for medical treatment and advice, the amount of which could not be known. He, alleged damages in the amount of $50.000, for which sum he prayed judgment.

Defendants answered by general denial and a plea of contributory negligence.

A trial to a jury was had resulting in a verdict of $10,000 in favor of plaintiff. After unsuccessful motion for a new trial, judgment was entered for plaintiff for the amount of the verdict, and defendants bring this appeal.

There are 24 assignments of error, but defendants in their brief say they rely upon four of them, viz.:

(1) That said court erred in overruling motion for a new trial of said plaintiffs in error, defendants below.

(18) That the verdict of the jury is outrageously excessive, and appears to have been given under the influence of passion or prejudice.

(19) That the verdict of the jury is not supported by the evidence.

(20) That the verdict of the jury is contrary to the evidence.

Under these four assignments defendants present the single proposition that the verdict of the jury is excessive and appears to

have been given under the influence of passion and prejudice.

The collision out of which this action arose occurred on the 23rd day of March, 1926, at the intersection of Shartel avenue and Thirty-first street, in Oklahoma City. Shartel avenue runs north and south; Thirty-first street runs east and west. The street car operated by defendants was going north on Shartel avenue, and the automobile in which plaintiff was riding was going west on Thirty-first street. Immediately after the collision, plaintiff was taken in an ambulance to St. Anthony's Hospital, where he was examined and his injuries were treated. The physician and surgeon who treated him was Dr. W. K. West, surgeon for the defendant receivers. X-ray photographs of the bone structures of his body were made, and a general examination as to his condition was made by the hospital staff. There is no substantial conflict as to the nature of the injuries received. Dr. West, a witness for defendants, testified:

"Q. Well, as a result of your examination, or, from the X-rays, did you ascertain the injuries, if any, which Mr. Brunson had sustained in the accident? A. Yes. Q. What were they? A. He had three injuries; he had a fracture of the ascending ramus of the pelvis on the left side; also the descending ramus of the pelvis on the left side which is the fracture of both prominences of the bone of the left side, and they are between the hip bones and the mid-line; and then, he also had a piece of bone fractured off the spine or the projection, what we call the transverse process off of the right side of the third lumbar verte ra: he also had some minor injuries that he called to my attention on his hands, bruises, which didn't amount to anything; those three fractures were his real injuries."

There is some evidence tending to show that one rib was fractured. Plaintiff was placed in a plaster cast extending from his arms down to his knees. He remained in the plaster cast five or six weeks. X-ray views were again taken on April 30th, five and one-half weeks after the first ones were taken. After the cast was removed, plaintiff remained in the hospital about five weeks. For a part of that time he used a wheel chair, and after that he could walk about by the aid of crutches. He used crutches until some time in August, after which he was able to walk without them. There is some conflict in the evidence as to whether he used a cane or not until about the following November, at which time he collapsed while sitting in his office, and was taken to the hospital of Dr. Hubbard, where he remained under treatment for about four weeks.

The controversy here arises not so much over the nature of the injuries as the extent and effect thereof. Plaintiff contends that his injuries are permanent, and defendants contend that at the time of the trial plaintiff had entirely recovered, and that he did not then and did not later suffer any trouble or discomfort by reason of the accident, and that a verdict of $10,000 as compensation for pain and suffering and loss of wages during a period of less than one year is excessive.

On the question of the permanency of the injuries, the evidence is in conflict. Aside from the evidence of plaintiff himself, we are left largely to evidence of expert witnesses on this point. X-ray views were taken at El Reno shortly before or during the trial, and several physicians, Dr. Joseph T. Phelps of Oklahoma City, Dr. Ralph Myers of Oklahoma City, Dr. James T. Riley of El Reno, and Dr. W. K. West, all qualified as experts in reading X-ray photographs, testified in substance that from examination of the various X-ray views, including some taken by Dr. Sullivan in August, 1926, in their opinion the fractures of the bones had healed, and that the union was practically perfect, and that in their opinion, plaintiff should not be and was not then suffering from any inconvenience or disability on account of the injuries. They all testified, however, that as to the fractures of the pelvic bone, the pictures show that the union of the bone was perfect, but that the bone was not perfectly placed together; that there was a slight misplacement in that the bone on one side of the line of fracture was slightly higher than on the other side. They all testified, in substance, that this would not be sufficient to cause any inconvenience in walking, or amount to what might be termed a permanent injury.

On the other hand, Dr. John C. Hubbard of Oklahoma City, who testified that he was a graduate physician and surgeon, a graduate in osteopathy and a graduate in chiropractics, was called as a witness for plaintiff, and testified at length as to the personal examination he had made of plaintiff, and also from certain of the X-ray views. His testimony was, in substance, that in addition to the pelvic bone having been fractured, it was somewhat misplaced in that it tipped slightly forward on the right side; that this would affect the man's "locability" or ability to get around; that this condition is permanent; that the body of the fifth lumbar vertebra was "jammed down upon the body

of the sacrum on the right side"; that the nerves which supply the posterior portion of the legs come out from the neural canal, between the fourth and fifth lumbar vertrabrae and the first three segments of the sacrum and that the displacement or jamming down of the fifth lumbar vertebra on the right side upon the body of the sacrum would account for the partial loss of control of the legs.

He also testified that, from an examination of plaintiff at the time he came to his hospital, he found that the lower pole of the right kidney was "easily palpable." The kidney was from an inch to an inch and and half below its normal position, and there was tenderness over that region, and that there was then pus in the right kidney. As to the misplacement of the kidney, there was much conflict in the evidence, all of the expert witnesses for defendants testifying, in substance, that there was no substantial misplacement of the kidney, and that in normal persons the right kidney is slightly lower than the left. In most of Dr. Hubbard's testimony he is corroborated by the testimony of Dr. Ralph E. Cowles, an experienced chiropractor and teacher of chiropractics.

Plaintiff testified, in substance, that at the time of the trial, he was still suffering from the effects of the injury in that he had difficulty in walking; could not walk steadily; suffered pain in his hips; could not walk up and down steps without a cane; could not drive an automobile very well; and general loss of strength; and that he was reduced in weight from 165 pounds to 143.

His evidence as to ability to walk without the use of a cane was hotly contested, and a number of photographs were introduced showing him in different places and under different circumstances walking without the use of a cane. These photographs were taken at various times between about September, 1926, and March, 1927. So that in all the testimony going to the permanency of the injuries there is a sharp conflict in the evidence. Defendants in their brief cite section 5996, C. O. S. 1921, which reads:

"For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not."

They then cite Sand Springs Ry. Co. v. McGrew, 92 Okla. 262, 219 Pac. 111, where it is held:

"It is well settled that in determining whether a verdict is excessive, each case must be ruled chiefly on its own facts and circumstances."

This is unquestionably the rule, but there are other general rules which should govern an appellate court in determining whether or not a verdict of a jury, which has been approved by the trial court, should be set aside as excessive.

In 4 C. J. p. 869, par. 2846, it is said:

"A finding of value or the amount of damages is ordinarily so much a matter within the exclusive province of the jury that it will not be disturbed by the reviewing court, and this is especially true where the verdict has been approved by the trial court. The operation of the rule is not affected by the fact that, in the opinion of the reviewing court, the amount awarded by the jury is larger or smaller than it should have been, where there was evidence to sustain the verdict, and nothing to induce the belief that the jury was actuated by prejudice, partiality, or corruption."

And again, in paragraph 2847:

"The authority invested in courts to disturb the verdict of the jury on the ground of excessive damages is one which should be exercised with great caution and discretion, and ordinarily the court will refuse to set aside a judgment on the ground that the award is excessive. * * * So it has been held that a verdict will not be disturbed on the ground that it is excessive where there is some evidence to support it; where the evidence would have authorized a larger amount of damages than that allowed; where the evidence is conflicting."

The text is supported by numerous authorities. In Oklahoma Producing & Rfg. Corp. v. Freeman, 88 Okla. 166, 212 Pac. 742, this court approved the rule announced by Chancellor Kent in Coleman v. Southwick, 9 Johns. (N. Y.) 45, as follows:

"The damages, therefore, must be so excessive as to strike mankind, at first blush, as being beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line, for they have no standard by which to ascertain the excess."

In Muskogee Electric Traction Co. v. Dunnam, 129 Okla. 70, 263 Pac. 1091, it was held:

"In an action for personal injury, the jury is charged with the duty to fix the amount of damages, and its verdict will not be set

aside for excessive damages, unless it clearly appears that the jury committed some gross and palpable error or acted under some improper bias, influence or prejudice, or has totally mistaken the rules of law by which the amount of damage is fixed. Held, that, in the instant case, the damages fixed by the jury are not excessive for the substantial injury suffered by plaintiff in this action."

Here, considering the injuries received from the view evidently accepted by the jury, based upon evidence such as that of Dr. Hubbard, and in view of all the evidence as to the nature of the injuries and the fact that the injuries admitted to have been received were such as to require that plaintiff be placed in a plaster cast, and there kept for five or six weeks, and that he was required to remain in the hospital for a period of ten weeks or more, and that he suffered great pain during that time, we cannot say that the verdict is excessive. In this connection, it may be said that from the record we regard the evidence sufficient to support a substantial verdict, if it be admitted that plaintiff's injuries were not permanent. He was certainly disabled for a long period of time, and this coupled with the evidence tending to prove the injuries permanent would tend strongly to support the verdict. Particularly is this true where there is nothing in the record to show that anything occurred at the trial which would likely inflame the minds of the jury against the defendant.

The judgment should be affirmed.

BENNETT, HERR, JEFFREY, and REID, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (3) anno. L. R. A. 1915F, 30; 46 A. L. R. 1230. See "Appeal and Error," 4 C. J. § 2847, p. 872, n. 19. "Damages," 17 C. J. § 181, p. 870, n. 60; § 419, p. 1099, n. 15.